**CRICKET COMMUNICATIONS, INC., Appellant**

v.

**TRILLIUM INDUSTRIES, INC., Timothy Southwell, Robert Beshirs, Cellular Distributor, Inc., and St. Paul Fire and Marine Insurance Co., Appellees.**

No. 05–06–00708–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 2007.

Rehearing Overruled Oct. 9, 2007.

Alan S. Notinger, David R. Weiner, Glast, Phillips & Murray, P.C., Dallas, TX, for Appellant.

Aubrey D. Pittman, The Pittman Law Firm, P.C., Robert D. Allen, Robert Loren Berry, Baker & McKenzie, LLP, Braden W. Sparks, Braden W. Sparks, P.C., Julie E. Heath, Dallas, Hastings Lyle Hanshaw, Hanshaw Kennedy, LLP, Frisco, TX, for Appellee

Before Justices MORRIS, FRANCIS, and MAZZANT.

## OPINION

Opinion by Justice FRANCIS.

Cricket Communications, Inc., appeals the trial court's take-nothing summary judgment against it on its claims against Trillium Industries, Inc., Timothy Southwell, Robert Beshirs, Cellular Distributor, Inc., and St. Paul Fire and Marine Insurance Co. In cross appeals, Southwell, CDI, and Trillium challenge the trial court's denial of their attorney's fees. Additionally, CDI contends the trial court erred in granting summary judgment against it on its counterclaims against Cricket. For the reasons set out below, we reject all issues and affirm the trial court's judgment.

Cricket is a wireless communications service provider and wholly-owned subsidiary of Leap Wireless International, Inc. Trillium is in the business of refurbishing used or broken cellular telephones for corporate customers. In 2002, Cricket entered into an agreement with Trillium in which Trillium would provide repairs, maintenance, and support for certain Cricket-owned wireless telephone products. As part of the agreement, the repair services were to be performed at Trillium's Coppell, Texas, facility. Further, Trillium was required to purchase and maintain various types of insurance policies and to designate Cricket as a payee "on consigned inventory loss." Trillium purchased initial and renewal insurance policies with St. Paul Fire and Marine Insurance Co.

Beginning in October 2002, Southwell and Beshirs, Trillium's sales director and human resources manager, respectively, began intercepting shipments of Cricket's cellular telephones to Trillium. Southwell and Beshirs then sold the cellular telephones to a third party, Cellular Distributors, Inc. (CDI), and received payment through a separate company owned by them. In March 2003, Cricket learned that CDI was offering thousands of its telephones for sale over the internet. Suspicious of the CDI sales, Cricket investigated and learned that the phones should have been in Trillium's inventory. In May, Cricket notified Trillium of a discrepancy between the number of Cricket phones shipped to Trillium and the number of phones shown received by Trillium. Trillium reported the incident to the Coppell Police Department and notified St.

Paul of the claimed loss of the Cricket inventory.

In early June, Cricket's counsel sent Trillium a document retention letter, demanding that Trillium retain and protect any documents related to "the receipt, handling, shipment and record keeping of certain equipment Trillium has handled on behalf of Cricket." During that same month, Cricket began working with federal law enforcement officials, who were investigating criminal charges against Southwell and Beshirs. By late that same month, Cricket expected arrests in the case to be made within weeks.

On August 11, 2003, Cricket sent a demand letter to Trillium in which it asserted that 29,708 of its phones were "either stolen, diverted or otherwise improperly removed" from Trillium's facility at a loss of $2,984,831. Cricket noted that actual losses may be higher. Cricket demanded Trillium pay the $2.9 million as reimbursement and reserved the right to "take any and all legal action necessary to cover all of its losses" if Trillium failed to pay.

Meanwhile, in April 2003, Cricket, Leap Wireless, and other related entities filed consolidated Chapter 11 bankruptcy cases in California. As part of its petition, Cricket filed schedules of assets but did not list the potential claims against appellees nor did it later amend its schedules to include the potential claims. On October 22, 2003, the bankruptcy judge signed an order confirming Cricket's Fifth Amended Joint Plan of Reorganization without these claims being disclosed. One month later, Cricket sued Trillium for negligence and later amended its petition to add causes of action and the remaining appellees as defendants.

Appellees sought summary judgment on the ground that Cricket was judicially estopped from bringing this lawsuit by its failure to disclose the claims to the bankruptcy court. Cricket raised several issues in its response, and in addition, filed its own motion for summary judgment arguing that because Southwell and Beshirs had previously pleaded guilty to a felony involving the theft and misappropriation of Cricket's phones, they were judicially estopped from denying their liability. In a series of rulings, the trial court granted appellees' motions for summary judgment but denied the requests of Southwell, Trillium, and CDI for their attorney's fees. It also granted summary judgment to Cricket on CDI's counterclaims.

The appeal/cross-appeals involve Cricket's claims against appellees; CDI's claims against Cricket; and Southwell, Beshirs, and Trillium's claim for attorney's fees. Our review begins with the trial court's summary judgment in favor of appellees on Cricket's claims.

■ We review the trial court's grant of summary judgment de novo to determine whether the movant's right to prevail is established as a matter of law. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex.2004); *G.C. Bldgs., Inc. v. RGS Contractors, Inc.*, 188 S.W.3d 739, 741 (Tex.App.-Dallas 2006, no pet.). A defendant who moves for summary judgment based on an affirmative defense must prove each essential element of that defense. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996). If the defendant's motion and summary judgment evidence establish its right to judgment as a matter of law, the burden then shifts to the party opposing the motion to raise a genuine issue of material fact or show the defendant's legal position is unsound. *G.C. Bldgs.*, 188 S.W.3d at 741–42. When reviewing a summary judgment, we accept all evidence favorable to the nonmovant as true, indulge the nonmovant with every favorable reasonable inference, and resolve

any doubt in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

Further, on cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *See Guynes v. Galveston County,* 861 S.W.2d 861, 862 (Tex.1993). When the trial court grants one motion and denies the other, the reviewing court should determine all questions presented. *See Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). The reviewing court should render the judgment that the trial court should have rendered. *Agan,* 940 S.W.2d at 81.

All parties agree that federal law applies to our analysis of the judicial estoppel issue. Because judicial estoppel was raised in the context of a prior bankruptcy proceeding involving Cricket's duty under the bankruptcy code, we agree and apply federal law. *See In re Coastal Plains Inc.,* 179 F.3d 197, 205 (5th Cir. 1999), *cert. denied,* 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000); *see also Horsley–Layman v. Adventist Health Sys./Sunbelt, Inc.,* 221 S.W.3d 802, 807 n. 3 (Tex.App.-Fort Worth 2007, pet. denied) (applying federal bankruptcy law to judicial estoppel to "promote the goal of uniformity and predictability in bankruptcy proceedings" and to "give the proper effect to the judgment of the bankruptcy court"); *Dallas Sales Co. v. Carlisle Silver Co.,* 134 S.W.3d 928, 931 (Tex.App.-Waco 2004, pet. denied); *Cleaver v. Cleaver,* 140 S.W.3d 771, 774 (Tex.App.-Tyler 2004, no pet.); *Stewart v. Hardie,* 978 S.W.2d 203, 208 n. 1 (Tex.App.-Fort Worth 1998, pet. denied) (op. on reh'g).

Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *In re Coastal Plains,* 179 F.3d at 205. The purpose of the doctrine is to protect the integrity of the judicial process by preventing a party from "playing fast and loose" with the courts to suit the party's own purposes. *Id.* It is generally applied when a party attempts to obtain an unfair advantage by intentionally asserting inconsistent claims in different courts. *See id.* at 206.

In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements. *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 783 (9th Cir.2001). There are, however, limitations to the doctrine of judicial estoppel based upon bankruptcy pleadings. *In re Coastal Plains,* 179 F.3d at 206–07. Specifically, to establish judicial estoppel involving a bankruptcy case, three elements must be proven: (1) the party to be estopped has taken a position clearly inconsistent with its previous position; (2) the previous court must have accepted the previous position; and (3) the party to be estopped has acted intentionally, not inadvertently. *Id.* at 206–07, 210.

In its first issue, Cricket contends the trial court erred in granting summary judgment to appellees on the affirmative defense of judicial estoppel and denying summary judgment to Cricket. Specifically, Cricket argues judicial estoppel does not apply because (1) it disclosed this lawsuit to the bankruptcy court and to the parties in the bankruptcy case, (2) even if it failed to disclose the claim, it was inadvertent, (3) it would "cause an inequitable and unjust result;" and (4) it is in the best interest of Cricket's creditors. Additionally, Cricket argues Southwell and Beshirs

themselves are judicially estopped from claiming any defense to liability because they judicially admitted liability by pleading guilty to a felony involving theft and misappropriation of the phones.

■ We begin with Cricket's argument that it did disclose this lawsuit to the bankruptcy court and the parties in the bankruptcy case. Cricket does not dispute that it did not amend its bankruptcy schedules to include this claim. Rather, it argues the lawsuit was disclosed in its Second Motion to Amend Order Authorizing Employment and Compensation of Professionals in the Ordinary Course of Business. This motion, however, was filed almost two months *after* the reorganization plan was confirmed by the bankruptcy court. Consequently, we disagree with Cricket's argument.

■ The bankruptcy code and rules "impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *In re Coastal Plains,* 179 F.3d at 207–08; *Hamilton,* 270 F.3d at 785; 11 U.S.C.A. § 521(a)(1) (West Supp. 2007). The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceedings. *In re Coastal Plains,* 179 F.3d at 208; *Hamilton,* 270 F.3d at 785. In other words, a debtor must amend schedules and forms if circumstances surrounding the bankruptcy change. *See In re Coastal Plains,* 179 F.3d at 208. If the debtor knows enough information to suggest it might have a cause of action, then it must disclose the potential cause of action, even if it does not know the legal basis of the claim. *Id.* The disclosure requirements are crucial to the effective functioning of the federal bankruptcy system. *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 362 (3rd Cir.1996). Creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan; consequently, the importance of full and honest disclosure cannot be overstated or overemphasized. *In re Coastal Plains,* 179 F.3d at 208; *Hamilton,* 270 F.3d at 784; *Ryan Operations,* 81 F.3d at 362.

The summary judgment evidence establishes that Cricket knew of its potential claims *no later than* August 2003 when it sent its demand letter to Trillium. Although required to amend its disclosure statements and schedules, Cricket did not. Instead, on appeal, Cricket relies on a post-confirmation motion to provide the disclosure required by the bankruptcy code. The bankruptcy court and creditors, however, based their actions on Cricket's preconfirmation disclosure statements and schedules. Thus, we cannot conclude the motion filed *after* confirmation of Cricket's reorganization plan provided the bankruptcy court and creditors with any information upon which to base pre-confirmation actions.

■ Similarly, we are unpersuaded by Cricket's suggestion that the bankruptcy court's order on the motion is somehow "law of the case" such that it precludes application of judicial estoppel in this lawsuit. Cricket argues it "openly disclosed" the lawsuit to the bankruptcy court and received "express approval" to spend funds to pursue this lawsuit, and the trial court here "was not warranted in contradicting" the order.

Having read the motion, we cannot agree that Cricket provided any kind of open disclosure of this lawsuit. Cricket sought to compensate its counsel as "an ordinary course professional" under the court's prior OCP order. In the motion, Cricket revealed the following information:

Cricket currently retains [counsel] for representation regarding a litigation matter against one of Cricket's equipment repair facilities (the "Litigation"). [Counsel] began preparation for the Litigation in October and recently filed and served a complaint against the equipment repair facility and its insurance carrier. Cricket believes the Litigation will be contested by the insurance carriers.

The declaration of Cricket's chief financial officer, which was attached to the motion, restated the same information. In other words, although the lawsuit had been filed, Cricket did not name the parties, the cause number, or the court, or provide any other identifying information other than the vague assertion that the litigation involved "one" of its equipment repair facilities.

■ Regardless, the "law of the case" doctrine is defined as "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Loram Maintenance of Way, Inc. v. Ianni,* 210 S.W.3d 593, 596 (Tex.2006) (quoting *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986)). This lawsuit is not a subsequent stage of the bankruptcy proceeding. It is not the same case; rather, it is an action that is independent of the bankruptcy. Consequently, law of the case simply is not relevant.

For the reasons set out above, we conclude appellees conclusively established that Cricket failed to disclose the claim (which is the equivalent of an affirmative representation that no such claim existed) and the bankruptcy court accepted that position. *Hamilton,* 270 F.3d at 784 (rejecting debtor's argument that notifying trustee by mail of pending claims sufficient when claims not listed on bankruptcy schedule); *see Jethroe v. Omnova Solutions, Inc.,* 412 F.3d 598, 600 (5th Cir.2005)

(concluding that judicial estoppel acceptance prong satisfied when court approved debtor's plan); *Donaldson v. Bernstein,* 104 F.3d 547, 555–56 (3rd Cir.1997) (same).

■ Cricket next argues that even if it failed to disclose the claim, appellees failed to establish as a matter of law, or as an undisputed fact, that Cricket's nondisclosure was not inadvertent. Judicial estoppel seeks to prevent the deliberate manipulation of the courts; it is inappropriate, therefore, when a party's prior position was based on inadvertence or mistake. *Helfand v. Gerson,* 105 F.3d 530, 536 (9th Cir.1997). In considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment. *In re Coastal Plains,* 179 F.3d at 210.

Cricket argues it lacked knowledge because it did not know of the extent of its claims, in part, because appellees "fraudulently concealed information and claims from Cricket." Specifically, Cricket asserts that in addition to its claims for missing "unaccounted for" phones, it also had a separate and independent claim for losses arising out of misclassified phone sales. In addition, Cricket asserts it had claims against Trillium for underreporting sales, negligent retention of Southwell, and fraud in failing to disclose information to Cricket about Southwell, as well as claims against CDI for allegedly purchasing Cricket's stolen property and St. Paul's alleged subsequent bad faith.

■ Contrary to any suggestion otherwise, all of these claims relate to the misappropriation of Cricket's phones while in the custody of Trillium, whether the phones were "unaccounted for" or misclassified. Cricket knew thousands of its

phones had been stolen, knew some of its missing phones were being sold by CDI, and knew a claim had been filed with St. Paul. The law is clear that a "debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then it is a 'known' cause of action such that it must be disclosed.' " *In re Coastal Plains,* 179 F.3d at 208 (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n,* 932 F.Supp. 859, 867 (E.D.Tex.1996)). "Any claim with potential must be disclosed, even if it is 'contingent, dependent, or conditional.' " *Id.* The undisputed evidence established that Cricket knew of facts to suggest that it had potential claims against all appellees. That it did not know the full extent of its claims is irrelevant. No fact issue is raised on lack of knowledge.

 Cricket next argues that appellees failed to conclusively establish that it had a motive to conceal the claims. Even if a debtor had full knowledge of a potential claim, as here, the failure to disclose that claim in a bankruptcy petition could nonetheless be deemed inadvertent where the debtor lacked a motive for concealment. *See Calafiore v. Werner Enters., Inc.,* 418 F.Supp.2d 795, 798 (D.Md.2006). If a debtor's undisclosed claim would have added assets to the bankruptcy estate, however, a debtor will usually be deemed to have a motive to conceal those claims. *Id.*

The undisputed evidence in this case shows that Cricket was investigating potential claims against Trillium in the spring 2003. By August, it knew that several thousands of its phones had been "stolen, diverted or otherwise improperly removed" from Trillium's facility. It knew that federal authorities were investigating Trillium employees Southwell and Beshirs on criminal charges and expected arrests to be made. It knew its claim against Trillium was worth at least $2.9 million but potentially more. And, it knew that Trillium had filed a claim with St. Paul regarding the missing phones. Despite these facts, Cricket did not amend its bankruptcy schedules or financial disclosures to notify the bankruptcy court or its creditors. Instead, it obtained confirmation of its reorganization plan in October, without disclosure, only to file this lawsuit the following month. Once this lawsuit was filed, it returned to bankruptcy court seeking an order that would allow its counsel in this case to be paid. Although it could have given the bankruptcy judge and parties to the case a clear idea of the pending litigation in its motion, it affirmatively chose not to, giving only the vaguest of information. Cricket's case has since evolved into several defendants and several claims, including claims for punitive damages. Finally, Cricket has offered no explanation for failing to disclose the asset to the bankruptcy court. We conclude these undisputed facts, as a matter of law, ascribe a motive to conceal sufficient to preclude any claim of inadvertency.

Cricket, however, argues it had no motive to conceal the claims because disclosure or nondisclosure did not have a "material impact on any creditor's decision to accept or reject" the plan of reorganization. Specifically, Cricket relies on the affidavit of Robert Klyman, who served as lead counsel for Cricket, Leap Wireless, and other subsidiaries and affiliates in the jointly administered Chapter 11 cases, to raise a fact issue.

According to Klyman, creditors were divided into three groups under Cricket's reorganization plan. The first group was comprised of priority and similarly situated creditors who received 100 percent of their claims; a second group was made up

of secured creditors who received 30 to 37 percent of their claims; and a third group comprised of unsecured creditors and holders of equity interest received zero percent of their claims. The second group, called "Vendor Debtholders," consisted of secured creditors holding about $1.6 billion in claims. Klyman asserted that the Vendor Debtholders' claims were undersecured by about $1 billion. Consequently, these claims were separated into a secured claim of about $600 million and an unsecured claim of about $1 billion. The unsecured claim then fell into the third group, which received nothing. As part of the reorganization plan, the Vendor Debtholders exchanged their claims for 96.5 percent of the stock in Cricket's reorganized parent company, Leap Wireless.

Klyman asserted that "as a matter of bankruptcy law and as set forth in the Plan of Reorganization," the first group received its consideration regardless of whether Cricket scheduled this lawsuit while the third group likewise received nothing, and the impact of this lawsuit was irrelevant to any voting decision within these two groups. Klyman explained that if this lawsuit had been scheduled as an asset available for distribution, any amount recovered would have been available only to the Vendor Debtholders. Klyman asserted that the nondisclosure of this claim did not have a material impact on these creditors because (1) the Vendor Debtholders converted their claims into new notes and stock in the reorganized Leap Wireless; (2) the Informal Vendor Debt Committee supported the reorganization plan, and "that support (and the vote of the secured class of creditors) was not dependent on the prosecution of this lawsuit"; and (3) any recovery in this lawsuit "would benefit those vendor debt holders as stockholders in the reorganized parent company." Finally, Klyman asserted that the amount at issue in this lawsuit is "immate-

rial" when compared to the size of the Vendor Debtholders' claims.

Initially, we note that this Court is not inclined to accept Cricket's characterization of a $2.9 million asset as "immaterial" even under the circumstances here. Regardless, the impact of nondisclosure must be measured in more than monetary terms. Such nondisclosures affect creditors' willingness to negotiate their claims and enhance the debtor's bargaining position by making the pot that creditors look to for recovery appear smaller than it really is. *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 325 (3rd Cir.2003), *cert. denied,* 541 U.S. 1043, 124 S.Ct. 2172, 158 L.Ed.2d 732 (2004). The result of omitting the claim in this case was that Cricket kept for itself an asset valued at a minimum of $2.9 million and did, in fact, make the "pot" for recovery appear smaller. Granted, the Vendor Debtholders now own stock in the reorganized Leap Wireless. However, owning stock in a financially troubled company is not the equivalent of having potentially millions more for creditors to consider when negotiating their claims.

In sum, whether there is a motive to conceal is not determined by the consequences of the success or failure of that motive. The financial impact to creditors is but a circumstance that may be considered. *See Krystal Cadillac-Oldsmobile,* 337 F.3d at 324 ("[A]pplication of judicial estoppel does not turn on whether the estopped party actually benefited from its attempt to play fast and loose with the court. . . . [T]he presence or absence of any such benefit is merely a factor in determining whether the evidence would support a conclusion of bad faith."). Here, by failing to disclose claims it knew it had, Cricket denied creditors the opportunity to investigate the claims, value them, pursue them or have Cricket do so, obtain an

interest in them, or object to the reorganization plan with respect to its reservation of these claims. Now, Cricket is pursuing those claims unencumbered by the bankruptcy court. Even considering Klyman's affidavit, we conclude Cricket has not raised a fact issue on inadvertency. *See Dallas Sales Co.,* 134 S.W.3d at 932) (rejecting debtor's explanation that claims inadvertently omitted because "principal concern [at the time of the bankruptcy filing] was to obtain post-petition financing").

■ Cricket next maintains that applying judicial estoppel in this case would be inequitable. In particular, it contends that foreclosing this lawsuit will not only prejudice Cricket, but Cricket's creditors. Additionally, it argues such a result would be "truly inequitable" given that appellees, "through their inequitable conduct and unclean hands, concealed evidence and information from Cricket and contributed to and in many respects caused Cricket's inability to expressly list or schedule certain claims prior to the October 2003 Plan confirmation." But, again, the law of judicial estoppel in a bankruptcy context is to protect the integrity of courts, not to punish adversaries or to protect litigants. *In re Coastal Plains,* 179 F.3d at 213. Moreover, we note that while Cricket points to appellees' "inequitable conduct," it ignores its own conduct in failing to amend its schedule to notify the bankruptcy court of a claim it knew it had. We reject Cricket's argument.

As for its contention that judicial estoppel should not apply because it is in the best interest of Cricket's creditors that it not, we disagree for the same reasons previously outlined. Likewise, we are unpersuaded by any suggestion that *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), a non-bankruptcy case, mandates a different result in this case.

Finally, Cricket asserts that Southwell and Beshirs are judicially and collaterally estopped from contesting their liability because they pleaded guilty and admitted their liability to Cricket. Cricket argues that when a person pleads guilty and receives a benefit from a plea bargain, he is barred from taking an inconsistent position in the civil case by judicial and collateral estoppel. Cricket relies on the following cases to support its position: *Lowery v. Stovall,* 92 F.3d 219, 225 (4th Cir.1996), *cert. denied,* 519 U.S. 1113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997); *United States v. Wight,* 839 F.2d 193, 195–96 (4th Cir.1987); *Fontneau v. United States,* 654 F.2d 8 (1st Cir.1981); *BankAtlantic v. Coast to Coast Contractors, Inc.,* 22 F.Supp.2d 1354, 1356 (S.D.Fla.1998). None of these cases, however, involves judicial estoppel as used here.

By raising judicial estoppel as a ground to preclude the lawsuit, Southwell and Beshirs are not challenging whether they stole Cricket's property; rather, they are challenging Cricket's ability to bring this suit in the first instance because of Cricket's own failure to disclose the claim. Consequently, we conclude they are not attempting to take a position inconsistent with that taken in the criminal proceedings. For the same reason, we reject Cricket's claim that they have waived their right to invoke judicial estoppel by pleading guilty.

We conclude appellees established their affirmative defense of judicial estoppel as a matter of law; accordingly, the trial court properly granted appellees' summary judgment motions and denied Cricket's. We overrule Cricket's first issue. Our disposition of this issue makes it unnecessary for us to address Cricket's second issue related to St. Paul. *See* Tex.R.App. P. 47.1.

In a cross-appeal, CDI argues the trial court erred in granting Cricket's no-evidence summary judgment motion as to CDI's claims against Cricket. CDI asserts it presented sufficient evidence on its claims against Cricket for negligence, negligent misrepresentation, malicious prosecution, business disparagement, breach of contract, and vicarious liability.

Texas Rule of Appellate Procedure 38 provides that a brief shall contain, among other things, a clear and concise argument for the contention with appropriate citations to authorities and record. TEX.R.APP. P. 38.1(h). Failure to cite authority or provide substantive legal analysis presents nothing for review. *Huey v. Huey,* 200 S.W.3d 851, 854 (Tex.App.-Dallas 2006, no pet.).

In its issue, CDI cites generally to four cases with respect to one element of one cause of action; it offers no legal authority for any of the other causes of action. Moreover, it has failed to provide any legal analysis for any of the claims. Accordingly, we conclude this issue is inadequately briefed and presents nothing for review. *See* TEX.R.APP. P. 38.1(h).

CDI also argues that the trial court erred in denying its motion for summary judgment on Cricket's claims on grounds other than judicial estoppel. It asks this Court to consider those grounds in "the interest of judicial economy." Having concluded the trial court properly granted summary judgment on judicial estoppel, we will not consider additional grounds. *See* TEX.R.APP. P. 47.1.

Finally, CDI, Southwell, and Trillium cross-appeal the trial court's denial of their requests for attorney's fees. They claim they were entitled to recover their attorney's fees as prevailing parties under the Texas Theft Liability Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 134.001–005 (Vernon 2005).

Section 134.005(b) provides that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." TEX. CIV. PRAC. & REM.CODE ANN. § 134.005(b). Cross-appellants argue this provision is mandatory, and the trial court had no discretion to refuse them their fees.

We need not decide whether the statute here is mandatory or discretionary because, regardless, none of cross-appellees pleaded for chapter 134 attorney's fees against Cricket. Specifically, the record shows that Southwell's pleadings contained no claim for attorney's fees; Trillium's pleadings requested attorney's fees only against cross-defendants Southwell, Beshirs, CDI, and Raymond Pevey (who is not a party to this appeal); and CDI sought attorney's fees against Cricket and others under sections 9.012(e)(3), 10.002(c), and 37.009 of the Texas Civil Practice and Remedies Code.

The purpose of pleadings is to give an adversary notice of claims and defenses, as well as notice of the relief sought. *Perez v. Briercroft Serv. Corp.,* 809 S.W.2d 216, 218 (Tex.1991); *Herrington v. Sandcastle Condominium Ass'n,* 222 S.W.3d 99, 102 (Tex.App.-Houston [14th Dist.] 2006, no pet.). A trial court cannot enter judgment on a theory of recovery not sufficiently set forth in the pleadings or otherwise tried by consent. *Herrington,* 222 S.W.3d at 102. Here, the claim was not pleaded and was not tried by consent. Because there were no pleadings to support their requests for relief under the statute, the trial court did not err in denying attorney's fees. *See Kreighbaum v. Lester,* No. 05–06–01333–CV, slip op. at 2–3, 2007 WL 1829729 (Tex.App.-Dallas June 27, 2007, no pet. h.).

Additionally, Cricket filed a notice of nonsuit of its theft claims against Trilli-

um and CDI before their motions for summary judgment were heard and ruled upon by the court. In its judgment, the trial court specifically dismissed these theft claims without prejudice.

 In the context of a summary judgment proceeding, a plaintiff may take a nonsuit at any time prior to the time the court renders judgment. *Taliaferro v. Smith*, 804 S.W.2d 548, 550 (Tex.App.-Houston [14th Dist.] 1991, no writ). If the defendant has a pending claim for affirmative relief, however, the plaintiff's nonsuit is effective for its own claims, but not for those of the defendant. *Le v. Kilpatrick*, 112 S.W.3d 631, 633 (Tex.App.-Tyler 2003, no pet.). A nonsuit without prejudice does not adjudicate the rights of parties but merely places them in the positions in which they would have been had suit not been brought. *McGowen v. Huang*, 120 S.W.3d 452, 461 (Tex.App.-Texarkana 2003, pet. denied). A nonsuit is effective as soon as it is filed. *See Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex. 1982).

At the time of the summary judgment hearing, Cricket had nonsuited its theft claims against CDI and Trillium. Neither CDI nor Trillium had a pending claim for attorney's fees under chapter 134. Thus, the theft claim was no longer pending, and the trial judge properly dismissed these claims without prejudice, meaning neither Trillium nor CDI was a prevailing party under the statute.

In reaching this conclusion, we reject cross-appellees' argument that they were entitled to rely on the trial court's previous summary judgment ruling in Southwell's favor. The record shows the trial court first ruled that judicial estoppel barred Cricket's claim when considering Southwell's motion for summary judgment. The trial court issued its ruling in December 2005. Neither CDI nor Trillium was a party to that motion. In fact, CDI and Trillium filed their motions for summary judgment, asserting judicial estoppel, just weeks after the trial court's ruling. Cricket then filed its notice of nonsuit of the theft claims.

Cross-appellees assert they were entitled to benefit from the earlier ruling and further assert it is "irrelevant" that they were not parties to the motion upon which the ruling was based. Cross-appellees cite no law for this particular proposition nor do we agree with cross-appellees' contention. The December 2005 ruling was directed to the motions filed by Southwell and other defendants, not CDI and Trillium. CDI and Trillium did not seek summary judgment relief from the trial court until later. Because Cricket filed its notice of nonsuit before the trial court ruled on CDI's and Trillium's motions, the notice of nonsuit was timely.

Finally, even if the above obstacles were not present, we would question the applicability of the statute to the facts of this case. Cross-appellants did not litigate the issue invoked by the statute, i.e., whether they had committed the theft of Cricket's cellular telephones. And, in fact, one of the cross-appellants, Southwell, has admitted his guilt in federal court. Given these circumstances, we question whether cross-appellants are, in fact, prevailing parties as contemplated by the statute. For the reasons previously stated, we conclude the trial court did not err in denying the requests for attorney's fees of CDI, Southwell, and Trillium. We overrule all issues presented in the appeal and cross-appeals.

We affirm the trial court's judgment.