**Opinion issued July 29, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00143-CV

———————————

**LAVINE THOMAS, Appellant**

**V.**

**GLEN GINTER, RICHARD J. GRIFFIN A/K/A R. JASON GRIFFIN, GRIFFIN LAW FIRM, PLLC, JOHN GRADY GRIFFIN, INNOVA MORTGAGE LLC, LAVINE THOMAS PROPERTIES LLC, AND INNOVA FINANCIAL LLC, Appellees**

---

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-00885-B**

---

## MEMORANDUM OPINION

Lavine Thomas appeals the trial court's grant of summary judgment based

on the doctrine of judicial estoppel in favor of appellees Glen Ginter, Richard J. Griffin a/k/a R. Jason Griffin, Griffin Law Firm, PLLC, John Grady Griffin, Innova Mortgage LLC, Lavine Thomas Properties LLC, and Innova Financial LLC. We affirm.

## Background

In 2005 and 2006, Thomas entered into several real estate transactions with Ginter, Richard J. Griffin, and another individual, Jake Gottfried. Subsequently, on January 3, 2007, Thomas filed for bankruptcy under Chapter 13. That same month, she filed a Statement of Financial Affairs and schedules disclosing all of her assets to the bankruptcy court, in which she indicated that she had no contingent and unliquidated claims.

A year after filing for bankruptcy, on January 9, 2008, Thomas filed a lawsuit in state court in Harris County against Ginter, Richard J. Griffin, Gottfried, and Lavine Thomas Properties, LLC, claiming that they had committed fraud in connection with the 2005 and 2006 real estate transactions, and alleging various tort and contract claims. She later added defendants to the lawsuit, including, among others, Griffin Law Firm, PLLC, John Grady Griffin, Innova Mortgage LLC, and Innova Financial LLC. Thomas did not amend her Statement of Financial affairs or the schedules filed with the bankruptcy court to reflect these

claims. After Ginter, Richard J. Griffin, and Lavine Thomas Properties LLC asserted counterclaims against Thomas, she filed a suggestion of bankruptcy with the state court.

On August 4, 2010, Ginter and Thomas filed a joint "Agreed Motion to Lift Stay" in the bankruptcy court. According to the motion, the parties sought to lift the stay to permit Ginter to prosecute the counterclaims that he had asserted against Thomas in the state court. The bankruptcy court granted the motion.

In January 2012, Thomas certified to the bankruptcy court that she had made all payments required by her confirmed Chapter 13 plan and moved for entry of discharge. The bankruptcy court signed an order granting Thomas a discharge on February 8, 2012. According to the bankruptcy trustee's final report, at the time of discharge, Thomas had paid 100% of the claims asserted against her, but paid interest on only some of the claims.

Four months after Thomas was discharged from bankruptcy, the appellees moved for summary judgment on all of Thomas's claims in the state court action on the ground that Thomas was judicially estopped from prosecuting the claims because she failed to disclose them to the bankruptcy court. John Grady Griffin also separately moved for summary judgment on the grounds that he could not be liable under a principal-agent theory for the acts of Innova Mortgage and that

3

Thomas's claims against him were barred by limitations. On August 30, 2012, the trial court granted the summary-judgment motions. Ginter, Richard J. Griffin, and Lavine Thomas Properties LLC then non-suited their counterclaims against Thomas.

On January 3, 2013, Thomas's claims against the appellees were severed so that the summary judgments became final. On February 14, 2013, Thomas filed a motion to extend post-judgment deadlines, requesting that the appellate deadlines run from February 14, 2013, the day she learned of the severance order. The trial judge granted the motion. Thomas filed her motion for new trial on February 17, 2013, and a supplemental motion for new trial on March 13, 2013, which were denied by written order on March 25, 2013.

After the trial court granted the summary judgments, but before the severance, Thomas filed a "Motion to Reopen Case" in the bankruptcy court, requesting that she be permitted to list the state court cause of action on her schedules, and asking the bankruptcy court to make a finding that her failure to list her claims against the appellees on her schedules was inadvertent.

On April 15, 2013, after the severance and the denial of Thomas's motion for new trial, the bankruptcy court granted Thomas's motion to reopen. The bankruptcy court entered an order that "the cause of action known as Cause No.

4

2008-00885 in the 125th District Court of Harris County, Texas is hereby listed as an asset in the case." The order further stated that "the failure of the Debtor to list the lawsuit among the assets of her estate at the time the bankruptcy was filed was an inadvertent omission. The Debtor and Debtor's counsel discussed the state suit with counsel for the trustee at the creditors' meeting."

The same day, Thomas filed a motion in the trial court for leave to file a second supplemental motion for new trial, along with the motion, which was based on the bankruptcy court's order of April 15, 2013. The trial court denied both motions by written order on April 22, 2013.

## Discussion

In five issues, Thomas challenges the trial court's summary judgment.

### A. Standard of Review

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A traditional summary judgment may be granted if the motion and summary judgment evidence establish there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When a defendant moves for summary judgment on an affirmative defense, the defendant must conclusively prove each element of the

defense as a matter of law.  *See Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).  We review the evidence presented in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.  *See Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848.

## B. Judicial Estoppel

### 1. Applicable Law

When a party invokes judicial estoppel in the context of a prior bankruptcy proceeding, we apply federal law to determine whether the doctrine applies.  *See Norris v. Brookshire Grocery Co.*, 362 S.W.3d 226, 229 (Tex. App.—Dallas 2012, pet. denied); *Bailey v. Barnhart Interest, Inc.*, 287 S.W.3d 906, 910 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see also Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 380 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (applying federal law).  Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position."  *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999), *cert. denied*, 528 U.S. 1117, 120 S. Ct. 936 (2000).  "It is designed to protect the integrity of the judicial process by preventing a party from 'playing

6

fast and loose' with the courts to suit the party's own purposes." *Brown*, 178 S.W.3d at 380 (quoting *Stewart v. Hardie*, 978 S.W.2d 203, 208 (Tex. App.—Fort Worth 1998, pet. denied)). The primary purpose of the doctrine is not to protect litigants, but rather the integrity of the judiciary. *Id.* Because the doctrine of judicial estoppel is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary. *See Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (quoting *In re Coastal Plains*, 179 F.3d at 205).

In the bankruptcy context, "[i]n determining whether to apply judicial estoppel, we primarily look for the presence of the following criteria: (1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id.* (internal quotation marks omitted); *see Norris*, 362 S.W.3d at 230 (citing *Cricket Commc'ns, Inc. v. Trillium Indus., Inc.*, 235 S.W.3d 298, 304 (Tex. App.—Dallas 2007, no pet.) and *In re Coastal Plains*, 179 F.3d at 206–07, 210). However, "judicial estoppel is not governed by inflexible prerequisites or an exhaustive formula for determining its applicability, and numerous considerations may inform the doctrine's application in specific factual contexts." *Love*, 677 F.3d at 261 (internal marks and quotations omitted).

The bankruptcy code and rules "impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *In re Coastal Plains*, 179 F.3d at 207–08. "The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceedings." *Cricket Commc'ns*, 235 S.W.3d at 305 (citing *In re Coastal Plains*, 179 F.3d at 208); *see Horsley-Layman v. Adventist Health System/Sunbelt Inc.*, 221 S.W.3d 802, 807–08 (Tex. App.—Fort Worth 2007, pet. denied) ("[D]ebtors have a continuing duty to formally amend their bankruptcy schedules if their circumstances change during bankruptcy.").

Whether a debtor's failure to disclose claims in bankruptcy was inadvertent presents a question of fact. *Love*, 677 F.3d at 262. A previous inconsistent position is inadvertent when the debtor lacks knowledge of the inconsistent position or has no motive for the inconsistency. *See Bailey*, 287 S.W.3d at 911 (citing *In re Coastal Plains*, 179 F.3d at 210); *Brown*, 178 S.W.3d at 381. "[T]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure." *Love*, 677 F.3d at 262. In the summary-judgment context, once the defendant demonstrates

8

that the plaintiff had a motive to conceal, the plaintiff bears the burden to show that the omission of the claim was inadvertent. *See id.*

With respect to acceptance, the primary issue is whether a party persuaded a court to accept a position such that it would appear that the court was misled. *Heartland Holdings, Inc. v. U.S. Trust Co. of Tex. N.A.*, 316 S.W.3d 1, 13 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Examples of a bankruptcy court "accepting" a debtor's claims for judicial estoppel purposes include cases where the debtor receives a discharge based on information he gives about his bankruptcy estate, and where the court issues a "no asset" discharge. *Norris*, 362 S.W.3d at 230. "[J]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Love*, 677 F.3d at 261–62 (quoting *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)).

## 2. Analysis

### a. Thomas's Untimely Second Supplemental Motion for New Trial

Before turning to the merits, we address the effect of Thomas's April 15, 2013 second supplemental motion for new trial, to which Thomas attached the bankruptcy court's order reopening her bankruptcy and finding that her failure to identify this case on her schedule was inadvertent. Under Texas Rule of Civil

Procedure 329b(b), an amended motion for new trial may be filed without leave of court before any preceding motion for new trial is overruled and "within thirty days after the judgment or other order complained of is signed." TEX. R. CIV. P. 329b(b). Here, the motion for leave to file the second supplemental motion and the motion itself both were filed more than 30 days after the February 14, 2013 judgment, and after Thomas's preceding motion for new trial was overruled by written order on March 25, 2013. Accordingly, Thomas's April 15, 2013 second supplemental motion for new trial was untimely. *See* TEX. R. CIV. P. 329b(b); *Prasad v. Capital Farm Credit, FLCA*, No. 01-12-00585-CV, 2013 WL 3877666, at \*2 (Tex. App.—Houston [1st Dist.] July 25, 2013, no pet.) (mem. op.) (*citing Low v. Henry*, 221 S.W.3d 609, 619 (Tex. 2007)).

In its discretion, a trial court may consider the grounds raised in an untimely motion for new trial and grant a new trial under its inherent authority. *Prasad*, 2013 WL 3877666, at \*2 (citing *Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex. 2003)); *see also* TEX. R. CIV. P. 329b (trial court has plenary power to grant a new trial or to vacate, modify, correct or reform the judgment until 30 days after signing a written order denying a motion for new trial). But the only purpose of an untimely motion for new trial is to guide the trial court in the exercise of its inherent authority because "[a] trial court's order overruling an untimely new trial

10

motion cannot be the basis of appellate review, even if the trial court acts within its plenary power period." *Moritz*, 121 S.W.3d at 720 (citing *Thomas v. Davis*, 553 S.W.2d 624, 626 (Tex. 1997)). Thus, an untimely amended motion for new trial "does not preserve issues for appellate review, even if the trial court considers and denies the untimely motion within its plenary power period." *Prasad*, 2013 WL 3877666, at *2 (quoting *Moritz*, 121 S.W.3d at 721).

Accordingly, here, the trial court's denial of Thomas's second supplemental motion for new trial, in which she first presented the bankruptcy court's April 15, 2013 order to the trial court, cannot be the basis of our review, and we therefore do not consider Thomas's contentions that are premised on that order in deciding this appeal. *See Moritz*, 121 S.W.3d at 721 (concluding that court of appeals erred in considering appellant's contention that trial court abused its discretion in denying untimely amended motion for new trial); *Prasad*, 2013 WL 3877666, at *2 (appellate court could not consider claim that trial court erred based upon grounds raised in untimely new trial motion).

### b. Did appellees' summary-judgment evidence conclusively demonstrate that Thomas's claims are barred by judicial estoppel?

Thomas acknowledges that the first element—that she took a position inconsistent with a prior position—is satisfied here, because "[t]he evidence

11

conclusively establishes that [she] did not disclose the state court lawsuit against Appellees in her Schedule of Personal Property or the Statement of Financial Affairs filed with the Bankruptcy Court." She nevertheless contends that the trial court erred in granting summary judgment because her clearly inconsistent position was not accepted by the bankruptcy court and her failure to disclose was inadvertent.

### i. Did the summary-judgment evidence conclusively demonstrate that Thomas's position was accepted by the bankruptcy court?

Thomas contends that the bankruptcy court did not accept her position because it "was notified of the existence of Thomas's claims against the Appellees," as evidenced by its order lifting the automatic stay over Ginter's counterclaims. She contends this order demonstrates that the bankruptcy court "never adopted Thomas's previous position that the lawsuit was not an asset to the bankruptcy estate, but formally allowed her to liquidate this claim unimpeded by the bankruptcy proceedings" and that "the Bankruptcy Trustee was informed of Thomas's claims and decided not to liquidate them because they were inconsequential or of no benefit to the bankruptcy estate."

However, Thomas had a continuing duty to amend the schedules, which she concedes that she did not do. The summary-judgment evidence shows that the bankruptcy court discharged Thomas based on schedules that made no mention of

12

her claims against the appellees. Accordingly, we conclude that the appellees met their summary-judgment burden to demonstrate that the bankruptcy court "accepted" Thomas's position when it discharged her from bankruptcy. *See Horsley-Layman v. Adventist Health Sys./Sunbelt Inc.*, 221 S.W.3d 802, 808 (Tex. App.—Fort Worth 2007, pet. denied) (although debtor had disclosed malpractice claim in motions filed with the bankruptcy court, debtor did not amend schedules, debtor's discharge is based upon disclosures made in the bankruptcy schedules, and bankruptcy court "accepts" position in schedules when it grants discharge).

Thomas also contends that the bankruptcy court did not accept her position because her claims against the appellees were abandoned by the bankruptcy trustee on the basis that they were burdensome or of inconsequential value to the estate. *See* 11 U.S.C. § 554(a). But the trustee's right to abandon a claim may only be asserted upon proper notice and a hearing. *See id.*; *Carter v. Carter*, 21 S.W.3d 441, 444 (Tex. App.—San Antonio 2000, no pet.). Here, there is no evidence that the trustee abandoned Thomas's claims after proper notice and hearing. Thomas points to an affidavit of the trustee's staff attorney, in which the staff attorney states that he "agreed to abandon" Thomas's claims against Ginter. But the affidavit does not state that the abandonment procedures were followed, and "a professed intent to abandon a claim [by the trustee], without notice and a hearing,

13

does not constitute an 'abandonment' of estate property." *Carter*, 21 S.W.3d at 444 (citing *In re Baudoin*, 981 F.2d 736, 738 n.4 (5th Cir. 1993)).

> ii.   **Did appellees meet their summary judgment burden to conclusively prove that Thomas's failure to disclose was not inadvertent?**

Because the appellees demonstrated that Thomas knew of her claims and had a motive to conceal them from the bankruptcy court, they were entitled to summary judgment on the issue of inadvertence unless Thomas demonstrated that the omission of the claims was inadvertent. *See Love*, 677 F.3d at 262. A previous inconsistent position is inadvertent when the debtor lacks knowledge of the inconsistent position or has no motive for the inconsistency. *See Bailey*, 287 S.W.3d at 911. Here, the summary-judgment evidence showed that Thomas was aware of her claims against the appellees while she was in bankruptcy, as evidenced by the fact that she filed a lawsuit against them. Moreover, the summary-judgment evidence showed that Thomas had motive to conceal the claims from the bankruptcy court because it diminished the pool of assets to be considered by the bankruptcy court. *See Love*, 677 F.3d at 262 (potential financial benefit is proof of motive for non-disclosure).

Thomas argues that her failure to disclose the claim to the bankruptcy court was inadvertent because: (1) the confirmed plan required her to pay her creditors

100% of what she owed them, (2) the bankruptcy court found that her failure to disclose was inadvertent, (3) the bankruptcy trustee knew about her claims and chose not to liquidate them because they were inconsequential or of no benefit to the bankruptcy estate, and (4) she was unaware of the alleged fraud underlying her state court claims at the time of the filing of her bankruptcy petition and notified the staff attorney for the bankruptcy trustee about the state court lawsuit after she filed her suggestion of bankruptcy in state court. We consider these contentions in turn.

First, Thomas argues that the fact that her creditors were paid 100% of what they were owed conclusively proves that she had no motive to conceal her claims. The appellees respond that for much of the five years that she spent in bankruptcy, Thomas was proposing to pay far less than 100% to her creditors, and that even when the creditors were finally paid, they did not receive any interest. This, according to appellees, shows Thomas had a motive to conceal.

The record shows that although Thomas paid 100% of the principal owed her creditors, she did not pay any interest to a number of them. *See Cricket Commc'ns*, 235 S.W.3d at 308 (financial impact on creditors is a circumstance to be considered when determining whether motive to conceal existed). Further, it is undisputed that, while the bankruptcy was pending, Thomas's creditors were

prevented from attempting to collect their debts. Even this temporary benefit to Thomas—delay of collection—constitutes a motive to conceal. *See Brown*, 178 S.W.3d at 381 (temporarily preventing creditors from collecting on claims by filing bankruptcy was benefit that showed motive to conceal). Accordingly, crediting all the evidence favorable to Thomas and disregarding all contrary evidence unless reasonable jurors could not, Thomas failed to raise a fact issue to defeat summary judgment on this issue. *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848; *see Love*, 677 F.3d at 262 (potential financial benefit from non-disclosure demonstrates motive to conceal).

Next, Thomas asks us to reverse based on the bankruptcy court's finding in its April 15, 2013 order that "the failure of [Thomas] to list the lawsuit among the assets of her estate at the time the bankruptcy was filed was an inadvertent omission." But this finding was not before the trial court at the time it granted summary judgment; indeed, the trial court granted summary judgment before the bankruptcy court entered the April 15 order. *See Mayfield v. Lockheed Eng. & Sciences Co.*, 970 S.W.2d 185, 187 n.2 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ("An appellate court may only review the summary judgment record in light of the issues raised and *proof* actually presented to the trial court by the parties in their written motions and responses." (emphasis in original)).

16

Relying on an affidavit prepared by a staff attorney for the bankruptcy trustee, Thomas next argues that the bankruptcy trustee knew about, and chose to abandon, her claims against the appellees, and therefore her failure to disclose the claims was inadvertent. As discussed above, the record does not show that the bankruptcy trustee actually abandoned Thomas's claims. *See Carter*, 21 S.W.3d at 444 ("[A] professed intent to abandon a claim [by the trustee], without notice and a hearing, does not constitute an 'abandonment' of estate property."). Moreover, the attorney's statement that "everything was disclosed to the court, the trustee and all creditors" is conclusory and therefore cannot defeat summary judgment. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997) (conclusory statements in an affidavit unsupported by facts are insufficient to support or defeat summary judgment); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (conclusory statement is one that does not provide underlying facts and cannot be readily controverted); *see also Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999) (holding that witness's affidavit is conclusory if it fails to explain basis of witness's statements to link his conclusions to facts).

Thomas relies upon *Ferguson v. Building Materials Corporation of America*, 295 S.W.3d 642 (Tex. 2009), to argue that notifying the trustee of a claim satisfies her disclosure obligations and raises a fact issue on inadvertence.

17

Although the debtors in *Ferguson* failed to identify their claim on the Schedule of Personal Property, they did list it in their accompanying Statement of Financial Affairs. *See id.* at 643. Further, the Fergusons included the claim in the trustee's report, which was presented to the bankruptcy court and the creditors before discharge, and agreed to recalculate the amount owed to their creditors when the omission was called to their attention. *Id.* Thomas concedes that, unlike in *Ferguson*, she did not identify her claim on the schedules or the Statement of Financial Affairs.

Finally, Thomas contends the summary judgment should be reversed because she was not aware of the alleged fraud committed by the defendants at the time that she filed for bankruptcy. But it is undisputed that she became aware of her claims against them while her bankruptcy was pending, as evidenced by her filing of the lawsuit. Thomas appears to suggest that she sufficiently complied with her disclosure obligations after learning of the fraud by filing a suggestion of bankruptcy in the state court action and by notifying the bankruptcy trustee of the state court action. For the reasons discussed above, the fact that the trustee knew of the existence of the state court lawsuit does not raise a fact issue regarding whether Thomas's failure to comply with her duty to amend her schedules was inadvertent. *See Cricket Commc'ns*, 235 S.W.3d at 305 (debtor's duty to disclose

potential claims continues for the duration of the bankruptcy proceedings); *Horsley-Layman*, 221 S.W.3d at 808 ("[D]ebtors have a continuing duty to formally amend their bankruptcy schedules if their circumstances change during bankruptcy.").

We overrule Thomas's first issue.

### c. Did Thomas raise a fact issue precluding summary judgment by adducing evidence that Ginter was judicially estopped from raising the defense of judicial estoppel?

Thomas contends that Ginter should be judicially estopped from asserting the defense of judicial estoppel because Ginter's motion to lift the stay represented to the bankruptcy court that Thomas would be able to proceed to trial with her claims, and Ginter took an inconsistent position when he moved for summary judgment. Thomas relies on the following statements in the motion to lift the stay to argue that Ginter affirmatively represented to the bankruptcy court that her state court claims would progress to trial:

- [Ginter] has alleged significant claims against [Thomas], claims that could result in a state court judge and jury awarding damages to [Ginter] that may equal or exceed any amount of damages, if any, that [Thomas] is attempting to seek against [Ginter].

- If the bankruptcy stay is not lifted, [Ginter] will be prejudiced by the potential ability of [Thomas] to prosecute and litigate her claims against [Ginter] without [Ginter] having the same opportunity to prosecute and litigate his claims against

19

[Thomas].  Such a situation is patently unfair and prejudicial to [Ginter], and deprives [Ginter] of his opportunity to obtain judicial relief and justice for claims that related to the same transactions and series of transactions on which [Thomas] is proceeding in the state court lawsuit.

- The [bankruptcy court] still has adequate remedies to protect the bankruptcy estate in that, if the bankruptcy stay is lifted and [Ginter] is allowed to proceed with discovery and trial in state court, any judgment obtained by [Ginter] would still need to be presented to the bankruptcy court for any further action.

We conclude that Ginter did not take a clearly inconsistent position, because Ginter did not take the position in the bankruptcy court that Thomas would proceed to trial on her claims, nor did he represent that he would not move for summary judgment on her claims.  *See In re Coastal Plains*, 179 F.3d at 205 (judicial estoppel requires a clearly inconsistent position).

We overrule Thomas's second issue.

## C. Are the summary-judgment orders void because the appellees violated the automatic stay?

Thomas contends that the summary-judgment orders[1] are void because the appellees violated the automatic stay by moving for summary judgment on her claims.  *See York v. State*, 373 S.W.3d 32, 38 (Tex. 2012) (action taken in violation of the automatic stay of the bankruptcy code is void).  The parties dispute whether

---

[1]     Thomas excludes the order in favor of Ginter, because he filed a motion to lift the stay.

20

the automatic stay was in effect at the time that the summary-judgment motions were filed.

Even assuming the stay was in effect, the stay extends only to claims asserted *against* Thomas. *See* 11 U.S.C. § 362(a); *Matter of U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994). Here, appellees were granted summary judgment only as to Thomas's claims asserted against *them*. Thomas's claims were not subject to the automatic stay and accordingly, appellees did not violate the automatic stay by moving for summary judgment on her claims. *See Matter of U.S. Abatement Corp.*, 39 F.3d at 568 (automatic stay applies only to claims against debtor).

We overrule Thomas's third issue.[2]

### Conclusion

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

---

[2] Because we have concluded that summary judgment on the basis of judicial estoppel was proper and that the judgments are not void, we do not reach Thomas's fourth and fifth issues, attacking the additional grounds for summary judgment raised by John Grady Griffin in a separate motion.

21