**Robert E. SPINKS, Jr. and Stacey M. Spinks, Appellants,**

v.

**Marvin R. BROWN, M.D., Appellee.**

No. 04–05–00361–CV.

Court of Appeals of Texas, San Antonio.

July 19, 2006.

Sidney R. Meadows, The Law Office of Sidney R. Meadows, McAllen, for appellants.

M. Kenneth Patterson, Patterson and Wagner, L.L.P., San Antonio, for appellee.

Sitting: SARAH B. DUNCAN, Justice (concurring in the judgment only), PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

Appellants Robert E. Spinks, Jr. and Stacey M. Spinks appeal the trial court's granting of the motion to dismiss filed by Defendant Marvin R. Brown, M.D. for failure to file an expert report conforming with the requirements of former article 4590i of the Texas Revised Civil Statutes.[1] Because Dr. Brown's actions were so inconsistent with an intent to assert the right to dismissal under Section 13.01(e) as to constitute waiver, we reverse the order of the trial court and remand this matter to the trial court for further proceedings consistent with this opinion.

### FACTUAL BACKGROUND

In November of 1995, Mr. Spinks suffered a puncture wound to his left foot which subsequently became infected and required a partial amputation performed by Dr. Brown. This procedure was immediately followed by attempts to place bypass grafts. Because the nurse was unable to insert a Foley catheter, Dr. Brown attempted to place Mr. Spinks' catheter. Dr. Brown subsequently requested a urologist assist in the insertion of the catheter. Unbeknownst to Dr. Brown, or any of the medical staff, Mr. Spinks suffered an undiagnosed urethral stricture disease making the insertion of the catheter unsuccessful. After the urologist was unable to insert the Foley catheter, a suprapubic catheter was inserted so as to allow the vascular surgeon to complete the surgery.[2] Mr. Spinks recovered from the foot surgery, but the stricture disease made several subsequent surgeries necessary.

### PROCEDURAL BACKGROUND

On November 23, 1998, Robert and Stacey Spinks filed a medical malpractice ac-

1. *See* Medical Liability and Insurance Improvement Act of Texas, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204 § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.001–.507 (Vernon 2005)). Because the repealed act was in effect at the time the Spinks filed this lawsuit, we will refer to it by its former statutory designation, Article 4590i.

2. Because of the complexity and length of the vascular surgery, a Foley catheter into Mr. Spinks' bladder was necessary to monitor fluids and prevent injury to the bladder.

tion, alleging negligence on the part of Dr. Brown in the placing of a Foley catheter. The lawsuit was originally tried in district court in September of 2001. On the eve of the trial, the Spinks requested a substitution of counsel which the trial court denied. A jury found in Dr. Brown's favor and a take-nothing judgment was entered. On appeal, this court reversed based on the trial court's failure to allow the substitution of counsel. On November 20, 2003, a mandate issued remanding the case for further proceedings. On August 18, 2004, the trial court entered a new discovery control plan, requiring all necessary discovery be completed by December 31, 2004, and a new trial was scheduled for February of 2005. Over six years after the original suit was filed,[3] Dr. Brown filed an Article 4590i motion to dismiss on January 14, 2005.

On January 20, 2005, the trial court granted Dr. Brown's motion to dismiss with prejudice based on the Spinks' failure to comply with the mandatory provisions of Article 4590i. Specifically, the trial court held that the expert report was inadequate, that the plaintiffs were not entitled to the thirty day grace period in which to cure their statutory deficiencies and that Dr. Brown had not waived his right to object even though his objection came years after the report was filed. The Spinks' motion to reconsider was denied by the trial court and this appeal ensued.

## 4590i Export Report

Under the provisions of Section 13.01, a plaintiff asserting a health care liability claim is required to provide each defendant with an expert report on or before the 180th day after filing the claim. Tex. Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d) (Vernon Supp.1999).[4] Article 4590i requires a curriculum vitae for each expert report and a summary of the expert's opinions regarding applicable standards of care, how the physician or health care provider failed to meet the standards, and the causal connection between that failure and the injury. Tex.Rev.Civ. Stat. art. 4590i, § 13.01(r)(6) (Vernon Supp.1999); *Am. Transitional Care Cntrs., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex.2001).

If the claimant does not comply with the statute within the prescribed time, an award of statutory sanctions, including dismissal with prejudice and reasonable attorney's fees and costs is mandated to the defendant physician or health care provider. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(e) (Vernon Supp.1999). When the Legislature amended Article 4590i to require trial courts to dismiss health care lawsuits unless an expert report that met certain requirements was filed, the intent was to stop suits that had no merit from proceeding through the courts and thereby reducing waste of the

---

**3.** We note that although almost six years had passed since the filing of the expert report, two of those years were limited to the appeal of the trial court's failure to allow for substitution of counsel. Thus, the actual amount of the "discovery time" is closer to three and a half calendar years or more than 1,400 days.

**4.** Prior to September 1, 2003, former Texas Revised Civil Statute Article 4590i, Section 13.01(d) provided:

Not later than the later of the 180th day after the date on which a health care liabili-ty claim is filed or the last day of any extended period established under Subsection (f) or (h) of this section, the claimant shall, for each physician or health care provider against whom a claim is asserted:

(1) furnish to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report; or

(2) voluntarily nonsuit the action against the physician or health care provider.

parties', the courts', and the insurers' time and money. *See In re Woman's Hosp. of Texas, Inc.*, 141 S.W.3d 144, 147 (Tex.2004) (J. Owen, dissenting).

## WAIVER

The Spinks contend that the trial court erred in granting the motion to dismiss because Dr. Brown waived his right to complain of the 4590i expert report. The Spinks argue that by participating fully in pretrial discovery and trial and waiting "over six years" from the time the expert report was filed, until less than one month before the second trial, Dr. Brown waived his right to object to the adequacy of the plaintiffs' expert report. We agree. We review a trial court's order dismissing a claim for failure to comply with the expert report requirements in Section 13.01(d) of Article 4590i under an abuse of discretion standard. *See Palacios*, 46 S.W.3d at 877; *Jernigan v. Langley*, 111 S.W.3d 153, 157 (Tex.2003). "Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, as in this case, the question becomes one of law." *Jernigan*, 111 S.W.3d at 157.

In accordance with Article 4590i, a defendant may challenge the adequacy of the report through an objection and motion to dismiss. TEX.REV.CIV. STAT. ANN. art. 4590i § 13.01(1). Although the current version of the statute requires a defendant physician or health care provider to file and serve any objection to the sufficiency of an expert report *no later than twenty-one days after being served* with the report or all objections are waived, the former Section 13.01 imposed no such deadlines in order to file a motion to dismiss. *Compare* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon 2005) (emphasis added), *with* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d).

In *Jernigan v. Langley*, the issue was whether a physician waived the right to move for dismissal when the physician waited more than 600 days to object to plaintiff's expert reports and participated in limited pretrial activities. *Jernigan*, 111 S.W.3d at 156. Recognizing that waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right, the Texas Supreme Court explained that implied waiver requires actions inconsistent with an intent to rely upon a party's rights. "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right." *Id.* at 156 (citing *Maryland Cas. Co. v. Palestine Fashions, Inc.*, 402 S.W.2d 883, 888 (Tex. 1966)).

Because waiver is largely a matter of intent, an implied waiver requires a clear demonstration of such intent from the surrounding facts and circumstances. *Id.* at 156–57. In *Jernigan*, in addition to waiting more than 600 days after receiving the expert reports to move for dismissal, Dr. Jernigan filed a motion for summary judgment on other grounds and responded to plaintiff's discovery. Further, Dr. Jernigan amended his answer to remove an affirmative defense of failure to follow statutory steps to perfect a claim. The supreme court held that these activities were not inconsistent with an intent to assert the right to dismissal under Section 13.01(e). In analyzing Dr. Jernigan's activities, the court noted that the defendant's participation in discovery was largely responsive to plaintiff's discovery, there had been no hearing on the summary judgment motion, and Dr. Jernigan had not subjected himself to a conventional trial before he moved for dismissal. Consequently, the court held that Dr. Jernigan's

overall actions were not inconsistent with his right to object to the expert's report.

The facts of this case, however, are distinguishable from those in *Jernigan*. The procedural facts relating to waiver are undisputed. Suit was filed on November 23, 1998. The 4590i expert report of Guadalupe Zamora, M.D. was filed February 10, 1999. Thereafter Dr. Brown requested and obtained a special trial setting and a discovery control plan order. Dr. Brown and the Plaintiffs exchanged written discovery and designated their trial experts, including several physicians, but not including Dr. Zamora.[5] Substantial discovery was completed including the depositions of numerous doctors and witnesses, as well as written discovery.

The first trial of this case proceeded on September 4, 2001 and ended in a take-nothing judgment that this court ultimately reversed and remanded with the mandate issuing in November 2003. Following remand, Dr. Brown conducted further discovery, sought a special trial setting and discovery control order. Ultimately, a controversy arose over the deposition schedule of Dr. Lapin, one of the plaintiff's experts and treating physicians. As a result, approximately one month before trial, on January 14, 2005, Dr. Brown filed a motion to dismiss based on the inadequacy of Dr. Zamora's report and alternatively, to exclude the testimony of Dr. Lapin. On January 25, 2005, the trial court granted the motion to dismiss.

Importantly, Dr. Brown's participation in discovery was far more extensive than the health care provider's in *Jernigan*. It was not just responsive discovery but active preparation for trial including deposi-

tions, written discovery and several hearings. *See In re Sheppard*, 197 S.W.3d 798 (Tex.App.-El Paso 2006, no pet. h.) (finding waiver based on a delay of over three years and extensive participation in discovery). Not only was there extensive discovery, but also a full jury trial before defendant raised his objection to plaintiff's expert report. During the hearing on the motion to dismiss, Dr. Brown's attorney informed the trial court that his client *intentionally* chose not to raise the 4590i issue before the first trial.[6] The conscious decision to go through the first trial without raising any objection to the expert report is inconsistent with defendant's right to assert an objection. *See Jernigan*, 111 S.W.3d at 157 (Failure to object to the report until after the case is disposed of on other grounds is one of the circumstances noted by the supreme court in *Jernigan* that supports waiver.).

Dr. Brown argues that since there is no deadline to challenge the adequacy of an expert's report under article 4590i, there can be no waiver based on untimeliness. *See Kidd v. Brenham State Sch.*, 93 S.W.3d 204, 208 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Although the Texas Supreme Court in *Jernigan* confirmed that merely waiting to file a challenge is insufficient to establish waiver, it concluded that waiver could be established if a defendant's silence or inaction shows an intent to yield the right to dismissal based on the report's inadequacy. *Jernigan*, 111 S.W.3d at 157. In this case, defendant delayed over 1,400 days, not counting the appeal, before filing an objection. It is the lengthy delay combined with the extensive discovery and trial strategy that establishes waiver.

---

5. At the hearing on the motion to dismiss the Spinks argued that had they known of the objection earlier, they could have substituted the expert report of Dr. Zamora with that of Dr. Lapin, one of the experts designated to testify at trial.

6. "I just want the court to know that we chose not to raise it before the first trial because we were squarely in control of the facts and experts ..."

Dr. Brown argues that no weight should be given to his failure to challenge the expert report prior to the first trial. Indeed Dr. Brown concedes that this was a tactical decision. He contends that once a new trial was granted, it had the legal effect of returning the case to the trial court as if there had been no trial. Consequently, Dr. Brown could thereafter assert his objections to the expert report as if no trial had occurred.

The fact that the case was remanded for a new trial does not preclude a finding of waiver based in part on behavior preceding the remand. Although the judgment was vacated, this had no effect on the preceding discovery. Consequently, the strategic decision not to seek dismissal and the intensive participation in discovery leading up to the first trial need not be disregarded in assessing waiver.

We conclude that Dr. Brown's actions, in the context of this particular case, were so inconsistent with an intent to assert the right to dismissal under Section 13.01(e) as to amount to a waiver of that right. As previously stated, the requirements of Article 4590i were intended to reduce the waste of the parties', the courts' and the insurers' time and money. None of these articulated purposes would be served in allowing a defendant to proceed to trial, utilize the appellate courts and then one month before the second trial move for dismissal under Article 4590i. As such, the trial court abused its discretion in granting Dr. Brown's motion to dismiss pursuant to Section 13.01(e). Accordingly, the trial court's order granting dismissal under Section 13.01(e) is reversed and this matter is remanded to the trial court for proceedings consistent with this opinion.