**Heidi C. HORSLEY–LAYMAN,**
**Appellant,**

v.

**ADVENTIST HEALTH SYSTEM/SUN-BELT, INC., d/b/a Huguley Memorial Medical Center, Kalman S. Narayan, M.D., and Fernando S.M. Angeles, M.D., Appellees.**

No. 2–06–066–CV.

Court of Appeals of Texas,
Fort Worth.

March 29, 2007.

Rehearing Denied April 19, 2007.

Harold H. Pigg, Lubbock, for appellant.

Cantey & Hanger, L.L.P., Stephen L. Tatum, J. Frank Kinsel, Jr., Tawanna Lynn Cesare, Decker, Jones, McMackin, McClane, Hall & Bates, Randy J. Hall, Fort Worth, Friedman & Feiger, L.L.P., Diane K. Shaw, Dallas, for appellees.

PANEL A: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### I. Introduction

In this medical malpractice case, appellant Heidi C. Horsley–Layman appeals the trial court's order granting summary judgment to appellees Adventist Health System/Sunbelt, Inc. d/b/a Huguley Memorial Medical Center, Dr. Kalman S. Narayan, and Dr. Fernando S.M. Angeles based on judicial estoppel. In three issues, appellant argues that fact issues remain regarding the doctrine of judicial estoppel, the ostensible agency of appellee Huguley, and appellant's affirmative defense of waiver. We affirm.

### II. Background Facts and Procedural History

Appellant, a physician, filed for Chapter 13 bankruptcy on November 30, 1992. Along with the filing, appellant and her husband signed several sworn schedules under oath. These schedules reflected outstanding creditor claims totaling $337,180.71 and indicated that appellant did not own any contingent or liquidated claims. Appellant also swore in her Statement of Financial Affairs that she was not a party to any lawsuit. On September 21, 1993, the bankruptcy court issued an Order Confirming Chapter 13 Plan, Value of Collateral and Allowing Attorney Fees, which provided for appellant's payments under the Chapter 13 plan.

At the suggestion of her sister, Dr. Shelia Horsley, appellant visited Huguley Memorial Medical Center on December 6, 1993 for gastrointestinal problems. Appellant noticed no posting, notation, or verbal instruction that the physicians practicing in the hospital were not employed by the

hospital, and appellant did not choose any of the physicians that treated her. Dr. Kalman S. Narayan performed tests to determine the source of appellant's problems and scheduled a gallbladder surgery for December 7, 1993. Dr. Fernando S.M. Angeles performed the surgery, which resulted in the complications that are the source of this litigation. Appellant developed three hematomas due to the bleeding in her abdomen and as a result, experienced seizures, incontinence, negative personality changes, and short-term memory loss. Because of these disabilities, appellant could no longer maintain her physician's practice.

On February 18, 1994, the trustee in appellant's Chapter 13 bankruptcy filed a motion to dismiss because appellant had fallen behind on the payments required by her original Chapter 13 plan. In response, on April 4, 1994, appellant filed a motion to abate the original plan payments. In this motion, appellant described the injuries she sustained from the gallbladder surgery. On May 3, 1994, the bankruptcy court, noting that abatement was in the best interest of all parties because of appellant's catastrophic illness, granted the abatement motion.[1]

On September 19, 1995, after appellant continued to miss payments, the bankruptcy trustee filed a second motion to dismiss, and the bankruptcy court granted it. Appellant then filed a motion for rehearing of the dismissal, and the bankruptcy court reinstated the proceedings on October 24, 1995, after determining that appellant cured the deficiencies in the plan payments.

Based on the injuries appellant suffered as a result of her gallbladder surgery,

---

1. During the seven-month abatement period, appellant was excused from making her regu- larly scheduled Chapter 13 plan payments.

appellant filed suit against appellees on February 16, 1996. The case against Dr. Angeles was appealed twice over the next five years. *See Horsley–Layman v. Angeles,* 968 S.W.2d 533 (Tex.App.-Texarkana 1998, no pet.) (reversing the trial court's dismissal of appellant's claims against Dr. Angeles) [2]; *Horsley–Layman v. Angeles,* 90 S.W.3d 926 (Tex.App.-Fort Worth 2002, pet. denied) (same).

Because of the appellate process, the medical malpractice case was inactive for several years, but appellant's bankruptcy proceedings continued. Appellant and her husband filed a response to the trustee's third motion to dismiss on July 13, 1998, in which they mentioned the malpractice lawsuit and requested permission to modify the payment plan. The bankruptcy court allowed the modification. On October 13, 1998, the trustee filed his final report in appellant's bankruptcy proceeding, and appellant was discharged from bankruptcy on October 14, 1998.

In her malpractice suit, appellant filed a third amended original petition on January 10, 2005, and appellee Dr. Angeles filed his first amended original answer alleging judicial estoppel on August 19, 2005. Appellees filed motions for summary judgment on the basis of judicial estoppel in August 2005 asserting that appellant failed to disclose her pending medical malpractice claim to the bankruptcy court in accordance with her plan. The trial court granted these motions. This appeal followed.

## III. Appellant's First and Third Issues

We address appellant's first and third issues together because they are related.

In her first issue, appellant complains that summary judgment on the affirmative defense of judicial estoppel was inappropriate because fact issues remain unresolved. In her third issue, appellant alleges that appellees waived their right to assert judicial estoppel as a defense.

### A. Standard of Review

■ A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *see* Tex.R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex.2004).

### B. Applicable Law

#### 1. Bankruptcy Law

■ In a bankruptcy action, the debtor must disclose all assets including contingent or unliquidated claims. 11 U.S.C.A. § 521(a)(1) (West Supp.2006). The duty to disclose is a continuing duty that requires the debtor to amend schedules and forms if circumstances surrounding the bankruptcy change. *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir.1999), *cert. de-*

---

**2.** Although appellant's case against Dr. Angeles was initially dismissed by the trial court on November 8, 1996, her claims against the other appellees were still pending. *See Horsley–Layman,* 968 S.W.2d at 535. Additionally her claim against Dr. Angeles was pending from February 16, 1996 until November 8, 1996, which was during the bankruptcy period. *See id.*

*nied,* 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000). If the debtor knows enough information to suggest that she might have a cause of action, then she must disclose the potential cause of action. *Id.* at 208. The debtor must disclose any potential causes of action even if she does not know the legal basis of the claim. *Id.*

## 2. Judicial Estoppel

■■■ The doctrine of judicial estoppel applies when a party attempts to assert a claim that is inconsistent with a claim asserted in a prior proceeding.[3] *Id.; Stewart,* 978 S.W.2d at 208. The doctrine of judicial estoppel is designed to protect the integrity of the judicial process by preventing a party from "playing fast and loose" with the courts to suit the party's own purposes. *In re Coastal Plains,* 179 F.3d at 205. The primary purpose of the doctrine is not to protect litigants but rather the integrity of the judiciary. *See id.* It is usually applied when a party attempts to obtain an unfair advantage by intentionally asserting inconsistent claims in different courts. *Id.* at 206.

■■■ To establish judicial estoppel involving a bankruptcy case, three elements must be proven: (1) the party to be estopped has taken a position clearly inconsistent with its previous position; (2) the previous court must have accepted the previous position; and (3) the previous inconsistent position was not inadvertent. *See id.* A previous inconsistent position is only inadvertent when the debtor lacks knowledge of the inconsistent position or has no motive for the inconsistency. *Id.* at 210.

## C. Analysis

Appellant filed for Chapter 13 bankruptcy on November 30, 1992. The complications that form the basis of this suit occurred on December 6 and 7, 1993. Subsequently, appellant amended her bankruptcy filings several times without formally including this claim as an asset.

Although appellant never officially amended the bankruptcy schedules, she and her husband filed a response to a motion to dismiss in the bankruptcy court in July 1998 that explained the malpractice claim. Appellant and her husband also filed a modification plan in the bankruptcy court in August 1998 that mentioned the medical malpractice claim, but they did not state the amount of recovery sought. Appellant and her husband were discharged from bankruptcy on October 14, 1998 without the court taking the malpractice claim into account.

Appellant concedes that she did not amend her bankruptcy schedules. According to appellant, regardless of this concession, the appellees still lose because they failed to establish as a matter of law the three elements of judicial estoppel. We disagree.

### 1. Clearly Inconsistent Position

■■■ Appellant argues that by mentioning her malpractice claim in motions with the bankruptcy court, she did not take the position that no claim existed. However, debtors have a continuing duty to formally *amend their bankruptcy schedules* if their circumstances change during bankruptcy. *See In re Superior Crewboats, Inc.,* 374 F.3d 330, 335 (5th Cir.2004) (finding inconsistent positions where a debtor failed to amend schedules but informed the trustee

**3.** To "promote the goal of uniformity and predictability in bankruptcy proceedings" and to "give the proper effect to the judgment of the bankruptcy court," we will apply federal bankruptcy law to this issue. *In re Coastal Plains,* 179 F.3d at 205; *Stewart v. Hardie,* 978 S.W.2d 203, 208 (Tex.App.-Fort Worth 1998, pet. denied) (op. on reh'g).

of the claim and later filed a lawsuit for $2.5 million); *In re Coastal Plains,* 179 F.3d at 210 (requiring the debtor to disclose that it believed the claim was worth millions so that it would not confuse the creditors). Confusion as to what must be disclosed to the bankruptcy court does not create a fact issue. *See In re Superior Crewboats,* 374 F.3d at 335–36 (stating that plaintiff's negligent nondisclosure did not prevent judicial estoppel or create a fact issue).

Here, appellant attempts to pursue this malpractice claim even though she did not previously alert her bankruptcy creditors as to how much the claim was worth or that the claim even existed. Even though appellant noted the malpractice claim on at least two other filings with the bankruptcy court, she had a duty to amend the *schedules. See id.* By omitting this claim from her schedules, appellant represented to her creditors that no such claim existed. *See In re Coastal Plains,* 179 F.3d at 210.

### 2. Position Accepted by Court

■ To prove the acceptance prong, a party must show that the previous court adopted the position urged by the party. *Id.* at 206. A court adopts the position if it relies on the assertion in making a decision or ruling. *Id.*

■ Here, the bankruptcy court discharged appellant based on her list of assets in the schedules, and the schedule did not include the malpractice claim.

### 3. Not Inadvertent

■ A debtor can establish inadvertence by showing that she did not know of the claim or had no motive to conceal the claim. *Id.* at 210. Appellant certainly knew about the claim because she pursued it while she was still under a duty to disclose all of her assets and claims. *Id.* at 208.

After reviewing the record and procedural history of appellant's bankruptcy and malpractice cases, we conclude and hold that appellant asserted inconsistent positions, the bankruptcy court accepted the position that appellant had no malpractice claim, and appellant knew of the malpractice claim while she was under a duty to disclose her assets. Therefore, appellant's discharge from bankruptcy after nondisclosure of her malpractice claim precludes her from pursuing that claim. *See id.* at 213.

### 4. Waiver

■ Appellant argues that appellees waived the defense of judicial estoppel because they did not assert it at an earlier time. Waiver is defined as an intentional relinquishment of a known right or conduct inconsistent with claiming that right. *Int'l Ins. Co. v. RSR Corp.,* 426 F.3d 281, 300 (5th Cir.2005); *Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex.2003). Waiver must be shown through intentional conduct that is inconsistent with claiming the right to dismiss for judicial estoppel. *See Jernigan,* 111 S.W.3d at 156. Mere silence cannot establish waiver unless the inaction shows an intent to relinquish the right. *Id.* at 157.

Appellant filed suit against appellees on February 16, 1996 and was discharged from bankruptcy on October 14, 1998. From 1998 to 2002, the case against Dr. Angeles was appealed twice regarding dismissal for appellant's failure to provide proper expert reports. *See Horsley–Layman,* 968 S.W.2d at 533; *Horsley–Layman,* 90 S.W.3d at 926. Appellant filed her third amended petition in January of 2005, nine years after she filed suit, and appellees included judicial estoppel in their motion for summary judgment filed on August 19, 2005.

Appellees waited until after the appeal regarding failure to provide a proper expert report to assert the judicial estoppel defense. However, appellees' filing of a motion to dismiss on other grounds was not inconsistent with their intent to assert judicial estoppel. *See Jernigan*, 111 S.W.3d at 157. By pursuing their right to dismissal under another theory, appellees did not show an intent to relinquish the right to judicial estoppel. *See id.*

We disagree with appellant's assertion that *Spinks v. Brown* is compelling authority. 211 S.W.3d 374, 378 (Tex.App.-San Antonio 2006, no pet.) (holding that defense was waived after the defendant went through a jury trial before asserting his right). Unlike the defendant in *Spinks*, here, appellees asserted their right to judicial estoppel while still in the summary judgment context. *See id.* Such pretrial actions are proper. *See Jernigan*, 111 S.W.3d at 158. Therefore, appellees did not waive their judicial estoppel claim. *See id.* Accordingly, we overrule appellant's first and third issues.

Because our conclusions on issues one and three dispose of appellant's claims against all parties, we do not reach the issue of ostensible agency. *See* Tex.R.App. P. 47.1.

### IV. Conclusion

Having overruled appellant's first and third issues, we affirm the trial court's order granting summary judgment in favor of appellees.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

I must respectfully dissent from the majority opinion because I cannot agree that Appellant's failure to amend the schedule

amounted to a representation that the otherwise disclosed claim did not exist.