

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-244-CV

KIMBERLY NORWOOD A/K/A      APPELLANTS
KIMBERLY ELLIOTT AND
EXECUTIVE CATERING, INC.

V.

TRACY NORWOOD AND         APPELLEES
NOR DUBOIS, INC.

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

This appeal involves a divorce that included litigation between not only

the husband and wife but also a closely-held corporation owned solely by the

husband and wife and a competing corporation for which the wife went to work

after the divorce proceedings began. In a single issue consisting of three

---

[1] *See* Tex. R. App. P. 47.4.

distinct complaints or subissues, appellant Kimberly Norwood a/k/a Kimberly Elliott[2] challenges the trial court's granting of appellees Tracy Norwood and Nor Dubois, Inc.'s motion for sanctions and the entry of a directed verdict in Nor Dubois's favor on its claims for breach of fiduciary duty, conspiracy to breach fiduciary duty, and tortious interference with contracts.  We affirm.

**Factual and Procedural Background**

Before marrying, Tracy and Kimberly formed Nor Dubois in March 2001 as a closely-held corporation for the purpose of operating a catering business for corporate aircraft.  Tracy owned sixty percent of the shares of Nor Dubois and Kimberly owned forty percent.  Each was an officer, director, and employee.  The couple married in February 2002.

Tracy filed for divorce in June 2004.  Although the couple continued to operate Nor Dubois's business, they began negotiating with third parties to sell the business during the summer and fall of 2004; Kimberly was involved in the negotiation process and remained as an employee throughout 2004.  She filed a counterpetition for divorce in September 2004.  The trial court entered an

---

[2] Although the notice of appeal was filed on behalf of both Kimberly and Executive Catering, Inc. and both were listed as parties on the docket sheet, Executive Catering is not listed as a party in the only appellant's brief, which does not request any relief on behalf of Executive Catering.  We also note that appellees elected not to file a brief.

Agreed Mutual Injunction later that month, which included a provision prohibiting the parties from "harming or reducing the value of the property of one or both of the parties."

According to Tracy, on January 14, 2005, he was in a hangar near the offices of Catering Art, a Nor Dubois competitor with whom Kimberly had previously talked "about some sort of a business arrangement." He saw Nor Dubois "vehicles pull up in front . . . and start unloading everything from products, lobster tail, packaging, coffee makers, . . . [and] everything that's in a catering kitchen from A to Z." When he went inside the building, he saw a room full of similar items, and one of the drivers told him "they had been doing this for three days." He called the police and had the activity stopped.

On January 19, 2005, Kimberly resigned as a Nor Dubois director and employee. In her resignation letter, she said that Tracy asked her not to come back to work on January 14 and refused her admittance to Nor Dubois's offices. Kimberly went to work for Executive Catering,[3] a business she incorporated with Tony Caterine, who also owned Catering Art.

On January 31, 2005, Tracy moved to enforce the parties' agreed injunction by contempt based on the January 14 incident. Tracy alleged that

---

[3] The evidence at trial showed that Executive Catering had been incorporated on January 12, 2005, with Kimberly listed as a director.

3

Kimberly had interfered with the contractual and business relations between Nor Dubois and its employees and customers. He further alleged that she had made harassing phone calls to his cell phone and changed the passwords on his private email accounts without authorization, making those accounts temporarily unavailable to him. Kimberly responded with her own motion for enforcement by contempt, alleging that Tracy had withdrawn $2,500 from an account of Aircraft Outfitters, a business owned solely by Kimberly, and had removed kitchen equipment and other assets belonging to Nor Dubois. The record does not show whether the trial court ruled on these motions.

On March 18, 2005, Kimberly brought a motion to compel discovery and for sanctions, asking the court to order Tracy to respond to requests for production and disclosure that she had served on him in November 2004. Tracy then filed his own motion to compel and for sanctions on March 21, 2005, asking the trial court to order Kimberly to respond to requests for production and disclosure that he had likewise propounded in November 2004. The record does not show whether the trial court ruled on these initial discovery-related motions.

In February 2006, Tracy's lawyer filed a subpoena to compel production of numerous documents related to Executive Catering. Tracy then filed another motion for sanctions, complaining of Kimberly's failure to produce documents

4

in response to a second set of requests for production and her failure to appear for a deposition. He also filed a motion to compel production of documents from Executive Catering, which had responded to the subpoena with objections and responses but no documents. After a hearing on March 21, 2006, the trial court sustained Tracy's motions and ordered the following: that Executive Catering produce the documents described in the motion to compel; that Kimberly appear for a deposition no later than April 11, 2006; and that Kimberly pay Tracy's attorney sanctions of $500.

Nor Dubois filed a petition in intervention on April 12, 2006. In the petition, Nor Dubois alleged (1) that Kimberly misappropriated tangible personal property from Nor Dubois and transferred it to Executive Catering, (2) that Kimberly breached a fiduciary duty to Nor Dubois and tortiously interfered with actual or prospective contracts between Nor Dubois and its customers to persuade them to transfer their business to Executive Catering, and (3) that Executive Catering is the alter ego of Tony and Linda Caterine, both directors of Executive Catering along with Kimberly. It named Executive Catering as a defendant, in addition to Kimberly.

Tracy filed a second motion for sanctions on May 4, 2006, contending that Kimberly had failed to pay the $500 as previously ordered in March. He also stated that the case was ready for mediation but only if the trial court

5

ordered one of the Caterines to attend. Although the record shows that the trial court set the motion for a hearing on June 6, 2006, it does not show whether the trial court ruled on the motion.

Tracy filed a third motion to compel on January 19, 2007, alleging that at Kimberly's deposition, she "refused to provide an address or a phone number for Tony Caterine and gave vague, if not inconsistent, testimony about his residence address." Kimberly had previously responded to a request for disclosure and an interrogatory with Tony's business address only; according to Tracy, attempts to serve Tony at that address were unsuccessful. Tracy also alleged that he asked Kimberly's counsel again for the information, but he refused. The trial court ordered Executive Catering to provide all residence addresses and phone numbers for Tony and imposed discovery sanctions of $1,500 on Executive Catering, payable to Tracy's counsel.

Appellees joined in a motion for sanctions filed February 22, 2007, six days before trial. In it, they alleged that Kimberly's November 8, 2006 responses to September 27, 2006 requests for disclosure and interrogatories were deficient. Specifically, appellees claimed that the responses (a) were not timely, (b) failed to state any legal theories or the factual bases for Kimberly's claims or defenses, and (c) failed to provide a brief statement of each identified person's connection with the case. They further claimed that they had notified

6

Kimberly's counsel of the deficiencies, but he had failed to respond. A review of Kimberly's responses shows that she identified a list of around thirty persons with "personal knowledge of the relationship" but failed to include a brief statement about each of those witnesses' connection with the case. She also failed completely to answer the questions regarding the legal theories and factual bases of her claims or defenses and the amount and method of calculating economic damages. Appellees asked the trial court to prohibit Kimberly from calling any witnesses at trial on Nor Dubois's claims and from offering evidence of any defenses. They also noted that Executive Catering had failed to pay the $1500 sanctions and asked for additional monetary sanctions.[4]

The trial court heard argument on the sanctions motion before beginning a bench trial on February 28, 2007[5] and decided that the motion should be granted. Accordingly, the trial court prohibited appellants from calling any witnesses at trial on, or offering evidence of any defenses to, Nor Dubois's breach of fiduciary duty, conspiracy, and tortious interference claims. After

---

[4] Executive Catering paid these sanctions on the afternoon of February 22, 2007, after appellees had filed their motion.

[5] On the back page of the motion is a "Notice of Hearing" stating that the motion was set for hearing "just prior to the inception of trial of this cause."

7

appellees rested, the trial court granted Nor Dubois a directed verdict "[o]n all the issues contained in . . . the amended [petition in] intervention."

On April 10, 2007, the trial court signed a decree granting the divorce and dividing the marital estate. The decree also ordered appellants, jointly and severally, to pay Nor Dubois damages of $235,000. The trial court did not specify which of Nor Dubois's claims supported the damage award. Appellants filed a motion for new trial, alleging that the sanctions imposed by the trial court were excessive, that the directed verdict was improper, and that there is no evidence supporting an award of damages to Nor Dubois, the same complaints Kimberly raises on appeal. The motion was overruled by operation of law.

### Issue on Appeal

Kimberly claims that the directed verdict in Nor Dubois's favor was improper because the trial court's sanctions order prohibiting appellants from offering witnesses and evidence in defense of Nor Dubois's claims, upon which the directed verdict was based, was improper; and even if the sanctions order was proper, Nor Dubois's evidence was legally insufficient to support the trial court's judgment in Nor Dubois's favor on both liability and damages.

8

**Standards of Review**

An appellate court reviews a trial court's ruling on a motion for sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004); *Richmond Condominiums v. Skipworth Commercial Plumbing, Inc.*, 245 S.W.3d 646, 660 (Tex. App.—Fort Worth 2008, pet. denied); *VingCard A.S. v. Merrimac Hospitality Sys.*, 59 S.W.3d 847, 855 (Tex. App.—Fort Worth 2001, pet. denied). The abuse of discretion standard requires us to determine whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because an appellate court would in a similar circumstance decide the matter differently does not demonstrate that an abuse of discretion has occurred. *Id*.

A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent or (2) when the evidence is insufficient to raise a material fact issue. *See Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Ray v. McFarland,* 97 S.W.3d 728, 730 (Tex. App.—Fort Worth 2003, no pet.). In reviewing a directed verdict, we must credit favorable evidence if reasonable jurors could and disregard contrary

9

evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 827.

### Propriety of Sanctions Order

Texas Rule of Civil Procedure 215.2 allows a trial court to sanction a party for failure to comply with a discovery order or request and lists the sanctions a court may impose. Tex. R. Civ. P. 215.2; *Cire*, 134 S.W.3d at 839. These sanctions include refusing to allow the disobedient party to support

10

or oppose designated claims or defenses or prohibiting designated evidence from being introduced into evidence. Tex. R. Civ. P. 215.2(b)(4); *Cire*, 134 S.W.3d at 839; *see also* Tex. R. Civ. P. 193.6(a) (providing that party who fails to make, amend, or supplement discovery response in timely manner may not introduce the untimely disclosed material into evidence and may not offer the testimony of an untimely identified witness unless the trial court finds good cause or absence of unfair surprise or prejudice).

A trial court's ability to sanction is limited by the requirement that the sanctions be just. *See* Tex. R. Civ. P. 215.2(b); *Cire*, 134 S.W.3d at 839; *Fethkenher v. Kroger Co.*, 139 S.W.3d 24, 35 (Tex. App.—Fort Worth 2004, no pet.). To determine whether discovery sanctions are just, we engage in a two-part inquiry. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006); *Fethkenher*, 139 S.W.3d at 35. First, a direct relationship must exist between the complained-of conduct and the sanctions imposed; in other words, just sanctions must be directed against the abuse and toward remedying the prejudice caused the innocent party. *Am. Flood Research*, 192 S.W.3d at 583; *Cire*, 134 S.W.3d at 839; *Fethkenher*, 139 S.W.3d at 35. Second, the sanctions must not be excessive; in other words, "[t]he punishment should fit the crime," and the trial court must consider the availability of less stringent sanctions and whether any available lesser sanctions would fully promote

11

compliance. *Am. Flood Research*, 192 S.W.3d at 583; *Cire*, 134 S.W.3d at 839; *Fethkenher*, 139 S.W.3d at 35. A trial court may not impose a sanction that is more severe than necessary to satisfy its legitimate purpose. *Cire*, 134 S.W.3d at 839; *Hamill v. Level*, 917 S.W.2d 15, 16 (Tex. 1996). In considering whether sanctions are just, we review the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the parties' discovery abuse. *Fethkenher*, 139 S.W.3d at 35; *Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (op. on reh'g).

Death penalty, or case-determinative sanctions, should be imposed only in exceptional circumstances in which they are clearly justified and it is fully apparent that no lesser sanction would promote compliance with the rules. *Cire*, 134 S.W.3d at 840–41; *Johnson ex rel. Johnson v. Chesnutt*, 225 S.W.3d 737, 743 (Tex. App.—Dallas 2007, pet. denied). An exceptional case exists when a party's hindrance of the discovery process justifies a presumption that its claims lack merit. *Cire*, 134 S.W.3d at 841; *Johnson*, 225 S.W.3d at 743.

12

**Applicable Facts**

Appellees served interrogatories and requests for disclosure on appellants in late September 2006, to which each responded on November 8, 2006. Neither Kimberly nor Executive Catering responded to the question asking for "the legal theories and, in general, the factual bases of the responding party's claims or defenses." In addition, each responded to a question inquiring about "the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case," with a list of the same thirty persons' names, addresses, and some phone numbers and the summary, "All of the above witnesses have personal knowledge of the relationship."

Appellees' counsel sent appellants' counsel a letter on December 11, 2006, noting that appellants had failed to state any legal theories or factual bases for their claims or defenses and that the summary provided about the witnesses' knowledge of the case was "so vague and overbroad that it is virtually meaningless." Accordingly, counsel asked appellants to correct the problems and send amended responses before December 27, 2006. Because appellants did not do so, counsel filed the motion for sanctions in February one week before trial.

At the sanctions hearing, which the trial court held immediately before trial began, appellants did not offer any explanation as to why they had failed to answer the question regarding claims and defenses other than to say that Kimberly's defense to the divorce was self-evident because she had filed a counter-petition for divorce. As to the production of the names and addresses of thirty witnesses who "had personal knowledge of the relationship between the parties," Kimberly's counsel argued that appellants were going to call only two witnesses: "the two women that were involved and aware and worked with and around both people involved." Counsel stated, "We don't have nothing more. We're not talking about corporations of individuals. We're talking about the relationship between the parties, the parties being" Tracy and Kimberly. He also explained that Executive Catering was late paying the $1500 due to a communication problem. As to Kimberly's counterpetition for divorce, counsel stated that "[t]he defensive posture . . . is they both want a divorce, they both complain of the action and that's self-apparent by the file that you have before you."

Counsel for Executive Catering argued that the discovery answers were merely incomplete and that the trial court could not exclude evidence, witnesses, or both unless it found unfair surprise or prejudice. According to

counsel, "[t]here is nothing in the responses that is new. There is nothing that they aren't already aware of."

Appellees' counsel responded that appellants' discovery answers were still insufficient because there were two corporations involved in the case as well as Tracy and Kimberly and that Kimberly's relationship with Executive Catering was not related just to the divorce but also to Nor Dubois's claims of breach of fiduciary duty and tortious interference. Thus, he still could not tell if appellants had defenses, or were going to call witnesses with respect to, Nor Dubois's claims in intervention. He also stated that he had not been provided with a witness or exhibit list as required by the local rules for Denton County.

In its order granting appellees' motion and prohibiting appellants from calling any witnesses at trial or from offering any evidence of defenses to Nor Dubois's claims, the trial court noted that it had taken judicial notice of the file in the case, "specifically, the prior orders of sanctions imposed on . . . Kimberly . . . and . . . Executive Catering."[6]

**Analysis**

---

[6] These prior orders are (i) the March 21, 2006 order compelling Executive Catering to produce documents, ordering Kimberly to attend a deposition, and ordering Kimberly to pay Tracy's attorney $500 and (ii) the January 30, 2007 order compelling Executive Catering to produce Tony Caterine's address and telephone number and ordering Executive Catering to pay Nor Dubois's counsel $1500.

15

Kimberly claims that the trial court abused its discretion by imposing sanctions prohibiting her from calling any witnesses or offering any evidence at trial on Nor Dubois's claims. Kimberly initially complains that appellees waived their right to seek sanctions by filing their motion too late. She also points out that the motion for sanctions was the first motion related to this particular set of discovery.

Only a failure to obtain a ruling before trial actually begins will waive the right to complain about the failure to answer discovery. *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993); *Trahan v. Lone Star Title Co. of El Paso, Inc.*, 247 S.W.3d 269, 282–83 (Tex. App.—El Paso 2007, pet. denied); *Adkins Servs., Inc. v. Tisdale Co.*, 56 S.W.3d 842, 844–45 (Tex. App.—Texarkana 2001, no pet.). Likewise, rule 215.2 specifically contemplates that a motion to compel need not be filed before a motion for sanctions. Tex. R. Civ. P. 215.2(b); *Adkins*, 56 S.W.3d at 844. Thus, we conclude and hold that appellees did not waive their right to sanctions.

16

Kimberly also claims that the sanctions were excessive.[7] The trial court indicated in its order that it had taken judicial notice of the file, specifically the prior sanctions orders, and it was aware of the past discovery abuses for which it had sanctioned appellants. Specifically, the record shows a pattern of Kimberly's recalcitrance in providing information about Executive Catering (a corporation for which she served as an initial director) and Tony Caterine, in addition to a pattern of both Kimberly and Executive Catering paying monetary sanctions imposed by the trial court only after Tracy and Nor Dubois had filed additional sanctions motions. Neither counsel for Kimberly nor counsel for Executive Catering told the trial court that appellants would be asserting any defenses to Nor Dubois's claims at the sanctions hearing; Kimberly's counsel told the trial court only that, as to the divorce, Kimberly wanted one as well as Tracy. Out of thirty potential witnesses identified in the discovery, Kimberly's counsel stated that he planned to call only two, but he never explained specifically what he thought those two would testify to other than Tracy and Kimberly's "relationship." Additionally, even though Kimberly and Executive

---

[7] An order prohibiting a party from presenting evidence on, or calling witnesses as to, claims or defenses for which the party failed to answer or supplement discovery is limited to the direct consequences of the offensive conduct; thus, the first *TransAmerican* prong is satisifed. *Jackson v. Jackson*, No. 01-05-00194-CV, 2006 WL 3438703, at *9 (Tex. App.—Houston [1st Dist.] Nov. 30, 2006, no pet.) (mem. op.).

17

Catering both failed to respond in any way to the discovery asking about the legal theories and factual bases of any claims or defenses, they continued to maintain to the trial court that they had only provided incomplete answers to the discovery. Thus, in addition to considering their past behavior hindering discovery, the trial court could have also concluded that lesser sanctions would not have been adequate based on appellants' refusal to acknowledge that they had failed to adequately answer the discovery.[8] Based on the foregoing, we conclude and hold that the sanctions were not excessive and that the trial court did not abuse its discretion by imposing sanctions under rule 215.2(b). *See* Tex. R. Civ. P. 215.2(b); *Cire*, 134 S.W.3d at 840; *Johnson*, 225 S.W.3d at 743–44; *Jackson*, 2006 WL 3438703, at *9; *see also* Tex. R. Civ. P. 193.6.

---

[8] Included in Kimberly's complaint about the sanctions is the allegation that she did nothing wrong and that the trial court improperly imputed Executive Catering's discovery abuses to her. However, our review of the record shows that the sanctioned behavior was not attributable solely to Executive Catering. Moreover, Kimberly was not only an employee of Executive Catering but also a director.

18

**Sufficiency of the Evidence**

Kimberly also challenges the legal sufficiency of the evidence to support the $235,000 damage award under either a breach of fiduciary duty or tortious interference theory.[9]

**Breach of Fiduciary Duty**

The elements of a breach of fiduciary duty claim are as follows: (1) the existence of a fiduciary relationship between the plaintiff and defendant; (2) defendant's breach of the duty imposed by the relationship; and (3) a resulting injury to the plaintiff or benefit to the defendant. *See Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied); *Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex. App.—Texarkana 2004, no pet.). Based on Tracy's testimony that Nor Dubois obtained its prospective customers from a list compiled by the National Business Aviation Association that is available to all members of the Association, Kimberly contends that there is no evidence of breach because she did not improperly use or share with Executive Catering any confidential or proprietary information.[10] Nor Dubois claimed that Kimberly took

---

[9] Kimberly's brief appears to contain a challenge to the award of damages based on conspiracy to breach fiduciary duty; however, this complaint was not preserved because it is inadequately briefed. *See* Tex. R. App. P. 38.1; *McClure v. Denham*, 162 S.W.3d 346, 349 (Tex. App.—Fort Worth 2005, no pet.).

[10] Kimberly also states in the "Summary of the Argument" part of her brief that "there is some question if [she] owed a fiduciary duty to Nor Dubois

20

not only its personal property with her to Executive Catering but also its pricing structure, menu, chef, and customer list.

A former employee may use the general knowledge, skills, and experience acquired in an employment relationship, even when competing with a former employer. *Sands v. Estate of Buys*, 160 S.W.3d 684, 687 (Tex. App.—Fort Worth 2005, no pet.); *Am. Derringer Corp. v. Bond*, 924 S.W.2d 773, 777 (Tex. App.—Waco 1996, no writ). But a former employee may not use confidential or proprietary information or trade secrets the employee learned in the course of employment for the employee's own advantage and to the detriment of the employer. *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 858 (Tex. App.—Fort Worth 2003, no pet.); *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551 (Tex. App.—Dallas 1993, no writ). To warrant protection, the information must have a substantial element of secrecy and give the employer a competitive advantage. *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 888 (Tex. App.—Dallas 2003, no pet.); *Rugen*, 864 S.W.2d at 552. Secrecy implies the information is not generally known or readily ascertainable. *Tom James of Dallas*, 109 S.W.3d at 888.

at all." But she failed to brief this challenge; thus, it is waived. *See* Tex. R. App. P. 38.1; *McClure*, 162 S.W.3d at 349.

21

Tracy testified that when Nor Dubois began doing business, he went to potential customers individually, including those for whom he had performed maintenance work, brought them samples, and held marketing parties. As the business grew, Nor Dubois took advice from its customers as to its services. The customer list was password protected and kept in a QuickBooks database; Tracy claimed that before Kimberly resigned, she changed the password so that he could not access the list, among other items. Additionally, the evidence shows that one of the offers to purchase Nor Dubois specifically set the purchase price for the customer list at $100,000, and the other included "current and future client base" as part of the business assets to be purchased for $225,000. According to Tracy, Executive Catering's client list included sixty of Nor Dubois's former customers.

On cross-examination, Tracy testified that Nor Dubois and its four competitors in the Dallas area were trying to reach at least one hundred customers with about $5 million in sales. When asked whether a list of these potential customers exists, Tracy answered that a member of the National Business Aviation Association can obtain the list. However, Tracy made it clear that this list is a "target" list and was not Nor Dubois's client list.

We conclude and hold that there is legally sufficient evidence to show that Kimberly and Executive Catering used proprietary information belonging to

22

Nor Dubois. The evidence shows that Nor Dubois developed its own client list, that it was kept in a password-protected database available to Tracy, Kim, and the office manager, and that at least two companies had specifically assigned a part of the purchase price offered to Nor Dubois to obtaining its client list. Accordingly, we address Kimberly's next complaint that there is no evidence to support the damage award to Nor Dubois.

Kimberly contends that the damage award is not supported by legally sufficient evidence because it is based solely on the diminution in value of Nor Dubois as a result of appellants' actions. According to Kimberly, a plaintiff may recover only out-of-pocket losses or lost profits for a breach of fiduciary duty. She cites *Texas Instruments Inc. v. Teletron Energy Mgmt*., 877 S.W.2d 276 (Tex. 1994), and *Duncan v. Lichtenberger*, 671 S.W.2d 948 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.), to support her argument. But these cases do not stand for the proposition that these measures of damages are the exclusive remedies for breach of fiduciary duty.

In *Texas Instruments*, the issue was whether the plaintiff proved lost profits stemming from breach of express warranties and DTPA violations with the required level of reasonable certainty. 877 S.W.2d at 277–80. And in *Duncan*, this court held that the evidence was sufficient to support an out-of-pocket expense damage award for breach of fiduciary duty as "the remedy

23

chosen by the appellees" in that case. 671 S.W.2d at 953. This court supported its conclusion in part on the jury's finding that the appellant's breach was a proximate cause of damage to the appellees. *Id*. Nothing in either of these cases restricts the types of damages that can be awarded on a breach of fiduciary duty claim. *See Horton v. Robinson*, 776 S.W.2d 260, 266 (Tex. App.—El Paso 1989, no pet.) (reviewing propriety of damage award for breach of fiduciary duty and civil conspiracy and noting that "[w]here the law furnishes no legal measure of damages and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury."); *cf. Swank v. Sverdlin*, 121 S.W.3d 785, 797–98 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (holding that damages model based on diminution in value of corporation as a result of breach of fiduciary duty was based on sound calculation but reversing because no evidence supported jury's award splitting total diminution in value into four parts and attributing one quarter of the total to each tortfeasor), *cert. denied*, 544 U.S. 1033 (2005).

Here, Tracy testified that after Kimberly left Nor Dubois—taking customers, supplies, and all of the employees, including the chef, with her—he was unable to continue operating the business on his own.[11] Although he was

---

[11] He could not access the Nor Dubois client list and supplier list for three days after Kimberly left because the password to the computer on which

24

able to sell the remaining equipment for $60,000 about a month after she left, he had to use that money to pay off the company's debts.  A certified public accountant, John Graves, testified that Nor Dubois was worth $236,773 as of December 31, 2004 but $0 after Kimberly resigned in January 2005.  A report he drafted, which was entered into evidence, noted that, "[i]n summary, [he] would value the business at $235,000, allowing for small fluctuations."  We hold that this evidence is sufficient to support the $235,000 damage award to Nor Dubois.[12]  *See Goodin v. Joliff*, 257 S.W.3d 341, 346 (Tex. App.—Fort Worth 2008, no pet.).

Because we conclude that none of Kimberly's subissues have merit, we overrule her sole issue on appeal.

**Conclusion**

---

these were stored had been changed.

[12] Because we have determined that the award is supportable based on Nor Dubois's claims alleging Kimberly's breach of fiduciary duty, we need not address her complaint regarding whether the award is supportable based on Nor Dubois's claim for tortious interference.  *See* Tex. R. App. P. 47.1; *Horsley-Layman v. Adventist Health Sys./Sunbelt, Inc*., 221 S.W.3d 802, 809 (Tex. App.—Fort Worth 2007, pet. denied).

Having determined that the trial court did not err by imposing sanctions against appellants and that the damage award to Nor Dubois is supported by the evidence, we overrule Kimberly's sole issue and affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, WALKER, and MCCOY, JJ.

DELIVERED: November 13, 2008